Chant Yedalian, Esq. (*Pro Hac Vice*)
**CHANT & COMPANY**
**A Professional Law Corporation**
1010 N. Central Ave.
Glendale, CA 91202
Phone: 877.574.7100
Fax: 877.574.9411

Kenneth M. Roberts, Esq.
Nevada State Bar No. 4729
**DEMPSEY, ROBERTS & SMITH, LTD.**
1130 Wigwam Parkway
Henderson, NV  89074
Phone: 702.388.1216
Fax: 702.388.2514
*Attorneys for Plaintiff Cirena Torres*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CIRENA TORRES, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> KWONG YET LUNG CO., INC. (d/b/a International Marketplace), and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: 2:14-CV-02223-MMD-PAL <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> [Filed concurrently with Declaration of Joyce Kwan, Declaration of Cirena Torres, Declaration of Chant Yedalian, Declaration of Daniella Flanagan,and [Proposed] Order, lodged herewith] <br><br> Judge: Hon. Miranda M. Du |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT Plaintiff, Cirena Torres, on behalf of herself and on behalf of the proposed Settlement Class, will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, for an Order granting preliminary approval of the proposed class action settlement on the terms and conditions set forth in the Stipulation And Settlement Agreement (hereinafter sometimes referred to as "Settlement Agreement" or "Agreement"), a copy of which is attached hereto as Exhibit 1.[1]

Plaintiff further moves the Court for an Order:

1. Certifying the Settlement Class for settlement purposes;

2. Appointing Plaintiff Cirena Torres, as the Class Representative for the Settlement Class;

3. Appointing attorney Chant Yedalian of Chant & Company A Professional Law Corporation and attorney Kenneth M. Roberts of Dempsey, Roberts & Smith, Ltd. as Class Counsel for the Settlement Class;

4. Approving the proposed notice to the Settlement Class, including the Postal Notice, Store Notice, Full Notice, and Claim Form, attached to the Agreement as Exhibits A through D, respectively;

5. Directing notice to be made to the Settlement Class as described in the Agreement;

6. Preliminarily approving the settlement subject to final review by the Court;

7. Establishing deadlines for Settlement Class members to submit a request for exclusion from the settlement and to submit objections to the settlement; and

8. Setting a Fairness Hearing on or about 105 days after the date that the Court grants preliminary approval of the settlement.

This Motion is based upon this Notice of Motion and Motion and Exhibit 1 attached hereto, the Declarations and other documents filed concurrently in support thereof, the papers and

---

[1] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

1   pleadings on file in this action, and upon such other and further evidence as the Court may adduce

2   at the time of the hearing.

3

4   DATED:  October 15, 2015          CHANT & COMPANY

5                                A Professional Law Corporation

6

7                              By:   /S/ – Chant Yedalian

8                                  Chant Yedalian

                           Counsel For Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION………………….……………………………………1

II.    FACTUAL SUMMARY………………………………………………... 1

III.   SETTLEMENT DISCUSSIONS, INCLUDING THE MEDIATION...………...…………2

IV.   THE SETTLEMENT…………………………………………………4

V.    THE SETTLEMENT CLASS………………………………………8

       A.     Numerosity…………………………………………………....8

       B.     Commonality……………………………………………….9

       C.     Typicality……………………………………………………11

       D.    Adequate Representation……………………………………………12

       E.     Rule 23(b)(3) Requirements Are Met……………………………………12

             1.     Predominance of Common Questions………………………………13

             2.     Superiority………………………………………………13

VI.   THE TWO-STEP APPROVAL PROCESS………………………………16

VII.  THE PRESUMPTION OF FAIRNESS…………………………………...17

VIII. THIS SETTLEMENT IS FAIR AND REASONABLE…………………………18

       A.     Risks of Continuing Litigation……………………………………19

             1.     "Willfulness"………………………………………………19

             2.     Class Certification……………………………………………20

       B.     Substantial Benefits of Settlement Compared to Risks of Continued Litigation….20

       C.     Agreement Provides That Change Of Law Before Final Approval
            of Settlement Will Not Compromise Settlement Class Members' Benefits……….23

       D.    The Settlement Is The Product of Extensive Arm's-Length Negotiations………...24

IX.   PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED…………………...24

X.    REASONABLE ATTORNEYS' FEES AND COSTS WILL BE SOUGHT IN
       CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT………………26

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3

XI.   A REASONABLE INCENTIVE AWARD WILL BE SOUGHT FOR THE NAMED
PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT..28

4

XII.   CONCLUSION…………………………………………………………………………28

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

# **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                     **Page(s)**

*Abels v. JBC Legal Group, P.C.*
        227 F.R.D. 541 (N.D. Cal. 2005)…………………………………………………….12

*Amchem Products Inc. v. Woodward*
        521 U.S. 591 (1997)……………………………………………………………….15

*Armstrong v. Board of School Directors of the City of Milwaukee*
        616 F.2d 305 (7th Cir. 1980)……………….…………………………………...17

*Bateman v. American Multi-Cinema, Inc.*
        623 F.3d 708 (9th Cir. 2010)……………………...........................13, 14, 15, 16, 20, 22, 23

*Battle v. Liberty National Life Ins. Co.*
        770 F.Supp. 1499 (N. D. Ala. 1991)…………………………………….................25-26

*Blackie v. Barrack*
        524 F.2d 891 (9th Cir. 1975)…………………………………………………………...9

*Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*
        917 F.2d 1171 (9th Cir. 1990)……………………………………….......................11

*Chalk v. T-Mobile USA, Inc.*
        560 F.3d 1087 (9th Cir. 2009)…………………………………….……………….14

*Class Plaintiffs v. City of Seattle*
        955 F.2d 1268 (9th Cir. 1992)…………………………………………………...16

*Craft v. County of San Bernardino*
        624 F.Supp.2d 1113 (C.D. Cal. 2008)…………………………………….......................22

*Deposit Guar. Nat'l Bank v. Roper*
        445 U.S. 326 (1980)……………………………………………………..................14-15

*Edwards v. First Am. Corp.*
        610 F.3d 514, 517 (9th Cir. 2010)…………………………………………………….23

*Eisen v. Carlisle & Jacquelin*
        417 U.S. 156 (1974)…………………………………………………………….....8, 15

*Elkins v. Equitable Life Ins. of Iowa*
        1998 WL 133747 (M.D. Fla. 1998)…………………………………………………16

*Evon v. Law Offices of Sidney Mickell*
        688 F.3d 1015 (9th Cir. 2012)………………………………………………….22-23

*First Am. Fin. Corp. v. Edwards*
        131 S.Ct. 3022 (June 20, 2011)…………………………………………………...23

*First Am. Fin. Corp. v. Edwards*
        132 S.Ct. 2536, 2537 (June 28, 2012)……………………………………………24

iii

**Page(s)**

*Hammon v. Barry*
    752 F.Supp 1087 (D. D.C. 1990)………………………………….........................18

*Hanlon v. Chrysler Corp.*
    140 F.3d 1011 (9th Cir. 1998)…………………….…………………..9, 11, 13, 14

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992)…………………………………………………...11

*Ingram v. The Coca-Cola Co.*
    200 F.R.D. 685 (N.D. Ga. 2001)…………………………...………………...28

*In re Activision Securities Litigation*
    621 F.Supp. 415 (N.D. Cal. 1985)……………………………...............11-12

*In re Alcoholic Beverages Litigation*
    95 F.R.D. 321 (D.C. N.Y. 1982)……………………………………….........9

*In re Cendant Corp., Derivative Action Litigation*
    232 F.Supp.2d 327 (D. N.J. 2002)…………………...…………………….....21

*In re Chicken Anti-Trust Litigation*
    560 F.Supp 957 (N.D. Ga. 1980)……………………………….………….....17-18

*In re Computer Memories Sec. Litig.*
    111 F.R.D. 675 (N.D. Cal. 1986)……………...……………………………….9

*In re Heritage Bond Litigation*
    2005 WL 1594403 (C.D. Cal. 2005)………………………….……………...21

*In re Pacific Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)……………………………...……………….....16, 18

*In re Portal Software, Inc. Sec. Litig.*
    2007 WL 1991529 (N.D. Cal. 2007)……………………………………….17

*In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*
    295 F.R.D. 438 (C.D. Cal. 2014)……………………………….……………22

*Jimenez v. Allstate Ins. Co.*
    765 F.3d 1161 (9th Cir. 2014)………………………………………………...10

*Jordan v. Los Angeles*
    669 F.2d 1311 (9th Cir. 1982)……………...………………………….......8, 9

*Kesler v. Ikea U.S., Inc., et al.*
    2008 WL 413268 (C.D. Cal. 2008)…………...................................................10, 11

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978)……………………………………………………12

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

**Page(s)**

*Local Joint Exec. Bd. of Culinary/Bartender*
*Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001)……………..……………………………………...12, 14

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
    834 F.2d 677 (7th Cir. 1987)……………………………………………………...18

*Martin v. Pacific Parking Systems, Inc.,*
    2012 WL 2552694 (C.D. Cal. July 2, 2012),
    Rule 23(f) petition for permission for discretionary
    leave to appeal the District Court's denial of certification
    granted by 9th Cir. Docket No. 12-80144,
    *affirmed* 2014 WL 3686135 (July 25, 2014)..……………………………………..20

*Medrano v. WCG Holdings, Inc.*
    2007 WL 4592113 (C.D. Cal. 2007)…………………………...…………………...10, 11

*Mirfasihi v. Fleet Mortgage Corp.*
    356 F.3d 781 (7th Cir. 2004)……………………………………………………...25

*Mullane v. Central Hanover Bank & Trust Co.*
    339 U.S. 306 (1950)……………………………………...…………………………24

*Murray v. GMAC Mortgage Corp.*
    434 F.3d 948 (7th Cir. 2006)……………………………………………..........14

*Murray v. GMAC Mortgage Corp. ("Murray II")*
    2007 WL 1100608 (N.D. Ill. 2007)…………………………….......................11, 16

*Nat'l Rural Telecomm. Coop. v. DirecTV*
    221 F.R.D. 523 (C.D. Cal. 2004)…..……………………………….…………..18, 19

*Officers for Justice v. Civil Service Commission of*
*City and County of San Francisco*
    688 F.2d 615 (9th Cir. 1982)..…………………………………………….......18, 19, 21

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985)…………………………………………………………………14

*Priddy v. Edelman*
    883 F.2d 438 (6th Cir. 1989)……………………………………………….........18

*Robins v. Spokeo, Inc.*
    742 F.3d 409 (9th Cir. 2014)……………………………………………………24

*Rodriguez v. West Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009)……………………………………………………28

*Satchell v. Fed. Express Corp.*
    2007 WL 1114010 (N.D. Cal. 2007)…………………………………………….18, 24

*Silber v. Mabon*
    18 F.3d 1449 (9th Cir. 1994)………………………………………………….24

v

Page(s)

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc*.
79 F.R.D. 571 (E.D. Pa. 1978)………………………….……………….....................18

*Spokeo, Inc. v. Robins*
135 S.Ct. 1892 (*certiorari* granted April 27, 2015)…………………………………….24

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003)……………………….……………………...8, 18, 19

*Steinberg v. Carey*
470 F.Supp. 471 (S.D. N.Y. 1979)………………………………………………...18

*Strube v. American Equity Life Ins. Co.*
226 F.R.D. 688 (M.D. Fla. 2005)………..……………………………………….16

*Tchoboian v. Parking Concepts, Inc.*
2009 WL 2169883 (C.D. Cal. 2009)………...………………………………...10, 11

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370 (9th Cir. 1993)………………………………………………………...19

*Valentino v. Carter-Wallace*
97 F.3d 1227 (9th Cir. 1996)………………………………………………………14

*Van Vranken v. Atl. Richfield Co.*
901 F.Supp. 294 (N.D. Cal. 1995)……………………………………………...28

*Yokoyama v. Midland Nat'l*
594 F.3d 1087 (9th Cir. 2010)…………………………………………………14

*Zinser v. Accufix Research Institute, Inc.*
253 F.3d 1188 (9th Cir. 2001)………………………………………………...13

**Federal Statutes**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA") …………...……………….2, 14, 16

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")……………………….………………………...*passim*

15 U.S.C. § 1681n…..…………………………………………………….2, 11, 14, 19

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23……………………………………………...……………..……..8, 15

FRCP Rule 23(a)…………………………………..……...….………..…………….8

FRCP Rule 23(a)(1)……………………………………………………..………….8

FRCP Rule 23(a)(2)………………………………………………....……………9, 10

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

**Page(s)**

FRCP Rule 23(a)(3)…………………………………………….…………...…...11

FRCP Rule 23(a)(4)……………………………………………...……………..12

FRCP Rule 23(b)(3)…………………...………..........................8, 12, 13, 14, 15, 16, 24

FRCP Rule 23(b)(3)(A), (B) (C) and (D)…………………………………….........15

FRCP Rule 23(c)(2)(B)……………….…..……………………….…………...24

FRCP Rule 23(e)…………………………………………......…….…4, 16, 17, 18, 19

FRCP Rule 23(e)(1)……………………………………………...……….…...24

FRCP Rule 23(f)…………………………………………….……....………20

**Other Authorities**

*Newberg on Class Actions*, 4th Ed…………..…….………………………………17, 18

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

After extensive negotiations, including a mediation with the Honorable Philip Pro (Ret.), Plaintiff and defendant Kwong Yet Lung Co., Inc. d/b/a International Marketplace ("International Marketplace") have reached a proposed class-wide settlement of this lawsuit.

Plaintiff, Cirena Torres, on behalf of herself and on behalf of the proposed Settlement Class, hereby respectfully moves the Court for an Order granting preliminary approval of the proposed class action settlement.

**II.     FACTUAL SUMMARY**

Defendant International Marketplace operates an international food store located at 5000 S. Decatur Boulevard, Las Vegas, Nevada 89118.  Kwan Decl. ¶¶ 2-4.  The store is open to members of the public and offers for sale a wide variety of goods, including international grocery items and kitchen supplies.  *Ibid.*  At any given time, International Marketplace will have at least 25,000 different goods for sale and generally maintains around 30,000 different items in its sale inventory.  *Ibid.*

Plaintiff Cirena Torres is a customer of International Marketplace.  Torres Decl. ¶ 3.  On October 11, 2014, Ms. Torres made a purchase from the International Marketplace store and she paid for her purchase with her credit card.  The electronically printed customer receipt which she was provided at the point of sale had the expiration date of her credit card, the first 5 digits and last 6 digits (which is a total of 11 of 16 digits of her card number), her name as it appears on the card, and the brand of the card (e.g. Visa, etc.), all printed on her customer receipt.  *Ibid.*

During the Settlement Class Period of December 31, 2012 to December 13, 2014 International Marketplace had a total of 259,696 credit card and debit card transactions.  Kwan Decl. ¶ 8.  Of these 259,696 credit card and debit card transactions, there were approximately 117,000 unique credit or debit cards used.  *Ibid.*  In other words, a number of customers made repeat purchases.  *Ibid.*

Each of these credit card and debit card purchases during the Settlement Class Period of December 31, 2012 to December 13, 2014 resulted in an electronically printed customer receipt

- 1 -

that displays the respective credit or debit card's expiration date and more than the last 5 digits of the card number on each customer's receipt.   Yedalian Decl. ¶¶ 2-5; Flanagan Decl. ¶¶ 12-15; Kwan Decl. ¶ 7.

On December 12, 2014, International Marketplace received a letter from Plaintiff's counsel in this case entitled "Notice To Cease And Desist FACTA Violations; And Notice Of Class Action Lawsuit," together with an enclosed copy of the Complaint in this case.   Kwan Decl. ¶ 5.

On December 13, 2014, International Marketplace ceased printing credit and debit card expiration dates and more than the last 5 digits of the card number on all electronically printed customer receipts.   Kwan Decl. ¶ 7.

The Fair and Accurate Credit Transaction Act ("FACTA"), which is a subset of the Fair Credit Reporting Act, provides that any merchant which accepts credit and/or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."   15 U.S.C. § 1681c(g)(1).   A merchant who "willfully" fails to comply with FACTA is liable for (1) actual damages, if any, or statutory damages of not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs.   15 U.S.C. § 1681n.

Plaintiff commenced this action on December 31, 2014 by filing a proposed class action complaint against International Marketplace and Doe defendants.   Plaintiff's Complaint alleges, *inter alia*, that International Marketplace and the other defendants willfully violated FACTA by printing the expiration date and more than the last 5 digits of credit and debit cards on electronically printed customer receipts printed at a point of sale or transaction.   International Marketplace denies any wrongdoing or violation of FACTA.

**III.    SETTLEMENT DISCUSSIONS, INCLUDING THE MEDIATION**

Beginning in January 2015, the Parties began to explore settlement discussions.   Yedalian Decl. ¶ 7.   Proposals (oral and written) were made and considered as part of these discussions. *Ibid*.   Underlying facts and information were also exchanged between the Parties to facilitate thee discussions.   *Ibid*.   While these discussions did not result in a settlement agreement, they did result

1   in an agreement to continue discussions among the Parties and potentially with a third-party

2   mediator in the event the Parties could not reach a resolution on their own.  *Ibid.*

3       After further discussions among the Parties did not result in a settlement agreement, the

4   Parties agreed to participate in a mediation before the Honorable Philip Pro (Ret.) with the hope

5   that he could assist the Parties in resolving (or at least narrowing) their disputes and differences.

6   Yedalian Decl. ¶ 8.

7       Judge Pro was extremely proactive.  Yedalian Decl. ¶ 9.  He requested and received

8   briefing and other information and held a teleconference before the mediation to try to make

9   progress, or at least try to narrow or otherwise streamline issues in advance of the mediation.  *Ibid.*

10      Judge Pro was just as hands-on at the mediation.  Yedalian Decl. ¶ 10.

11      The Parties participated in an in-person mediation with Judge Pro in Las Vegas, Nevada on

12  May 13, 2015.  Yedalian Decl. ¶ 11.  Plaintiff Ms. Cirena Torres, and Class Counsel Mr. Chant

13  Yedalian each traveled to and personally attended the mediation along with local and Class

14  Counsel Mr. Kenneth Roberts.  *Id*. at ¶ 12.  The president of International Marketplace, Ms. Joyce

15  Kwan, and defense counsel, Mr. Jacques Chen also attended the mediation.  *Id*. at ¶ 12.

16      Although the mediation was initially scheduled for a half a day and commenced in the

17  morning, because the Parties were making progress with Judge Pro, the Parties and Judge Pro

18  agreed to continue on with the mediation into the early evening.  Yedalian Decl. ¶ 13.

19      During the mediation and with Judge Pro's assistance, the Parties reached agreement on a

20  class-wide settlement structure and benefits to class members.  Yedalian Decl. ¶ 14.  With the

21  class benefits negotiated and agreed upon, the Parties then proceeded with discussions concerning

22  attorneys' fees and costs and incentive awards.  *Ibid*.  Ultimately, all of these issues were resolved

23  with Judge Pro's assistance.  *Ibid*.

24      During the months that followed, counsel worked on the long-form settlement agreement,

25  entitled Stipulation And Settlement Agreement (hereinafter sometimes referred to as "Settlement

26  Agreement" or "Agreement") (which includes the Postal Notice, Store Notice, Full Notice, Claim

27  Form, and proposed Preliminary Approval Order). Exh 1.[2]  Yedalian Decl. ¶ 15.

28  _____

[2] Capitalized terms shall have the same meanings as in the Settlement Agreement.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

1    Thus, the Settlement Agreement is a product of all of the extensive negotiations and

2  exchanges between May 2015 and September 2015, including but not limited to the mediation and

3  other discussions and negotiations with mediator Judge Pro. Yedalian Decl. ¶ 16. The Settlement

4  Agreement is also based upon the information exchanged by the Parties. *Ibid.*       .

5  **IV.    THE SETTLEMENT**

6    Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP")

7  Rule 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in

8  the Settlement Agreement. A summary of the terms of the Settlement Agreement is as follows:

9    • During the Settlement Class period of December 31, 2012 to December 13, 2014

10  259,696 electronically printed credit and debit card customer receipts were printed that display the

11  respective card's expiration date and more than the last 5 digits of the card number on each receipt.

12  Yedalian Decl. ¶¶ 2-5; Flanagan Decl. ¶¶ 12-15; Kwan Decl. ¶ 7.

13    • The Parties are not aware of any customer who has sustained any actual damages as

14  a result of the printing of the expiration date or more than the last 5 digits of the card number on

15  any of the subject receipts in this case.

16    • For the purposes of the settlement, the Parties have stipulated to the certification of

17  the following Settlement Class: "all consumers who, at any time during the period December 31,

18  2012 to December 13, 2014 (the 'Settlement Class Period'), were provided an electronically

19  printed receipt at the point of a sale or transaction at the International Marketplace Store, on which

20  receipt was printed more than the last 5 digits of the credit card or debit card number and/or the

21  expiration date of the consumer's credit card or debit card." Agreement ¶ 2.S.

22    • Each Settlement Class member, after submission of a valid and timely Claim Form,

23  will be eligible to receive one gift card with a value of $50.00 valid towards any purchase of a

24  good or service at the International Marketplace Store (a "Gift Card"). Agreement ¶ 18(a).

25    • Each Settlement Class member may submit only one Claim Form regardless of the

26  number of credit or debit card transactions made by that Class Member during the Settlement

27  Class Period, and International Marketplace is only obligated to distribute one Gift Card per

28  Settlement Class member. Agreement ¶ 18(a).

• A valid claim will require that a Settlement Class member provide one of the following items of information:  (1) an original or copy of a store receipt which shows more than the last 5 digits of the credit card or debit card number and/or the expiration date of the credit card or debit card printed on the receipt; (2) an original or copy of a credit card or debit card statement showing a transaction made at the International Marketplace store during the Settlement Class Period; or (3) for those Settlement Class members who happen to a member of the International Marketplace store, they may provide their member number and confirm that they made at least one purchase from the store during the Settlement Class Period.  Agreement at Exh. D.

• Each $50.00 Gift Card (i) will be fully transferable to any and all other persons, (ii) shall not expire, (iii) shall not be redeemable for cash, (iv) may only be used to make a purchase of any good or service at the International Marketplace Store, and (v) is not a coupon nor does it have the attributes of a coupon. Agreement ¶ 18(a).

• Approximately 95% of the items International Marketplace offers for sale are priced less than $50.00 and the average price of goods sold at the store is $4.20.  Kwan Decl. ¶ 4.

• Given the nature of this particular consumer class action case, the fact that International Marketplace does not know, nor does International Marketplace have access to any information which would enable it to determine, the postal addresses, email addresses, telephone numbers or facsimile numbers of those absent Settlement Class members who are not members of the store, and experience with consumer class action claims-made rates, it is expected that relatively few claims will be made and that a residue may result.  Accordingly, Plaintiff negotiated, and International Marketplace agreed to, a substantial *minimum* distribution as well as on a plan for the disposition of any residue from that *minimum* distribution.  Thus, 10,000 is the minimum number of International Marketplace Gift Cards to be distributed as part of this settlement.  In the event that the number of valid claims is less than 10,000, the number of valid claims shall be deducted from 10,000 and the resulting amount shall be the number of Gift Cards that shall be distributed in an appropriate *cy pres* distribution.  Thus, for example, if there are 1,000 valid claims submitted, 1,000 Gift Cards would be distributed to those valid claimants; then, 1,000 would be subtracted from the 10,000 minimum Gift Card distribution and the resulting

- 5 -

amount, 9,000 Gift Cards, would be distributed in an appropriate *cy pres* distribution.  Agreement ¶ 18(b).  The *cy pres* distribution proposed by Plaintiff consists of the following charities in equal divisions: (1) Las Vegas Valley Humane Society; (2) Desert Rescue Animal Sanctuary; and (3) Tortoise Group.[3]  Despite having months to do so, it was not until today, October 15, 2015, that Defendant first conferred (by email only) and proposed any charity.  Only today did Defendant's counsel propose the following three charities as Defendant's proposed charities:  (1) Las Vegas Rescue Mission; (2) Three Square Food Bank; and (3) Catholic Charities of Southern Nevada.  Despite Defendant's proposal which came only today, Plaintiff responded by offering to a compromise solution whereby the Parties could agree on proposing all 6 charities (the 3 proposed by Plaintiff and the 3 that Defendant proposed today) with any residuals equally divided among them.  Defendant responded "We will separately propose the charities we believe are appropriate."

- As part of the settlement, International Marketplace shall implement a written FACTA compliance policy, stating that it shall comply with FACTA, 15 U.S.C. Section 1681c(g), and that it shall not print more than the last five digits of the credit or debit card number nor the credit or debit card expiration date upon any electronically printed receipt provided to any credit or debit cardholder at the point of any sale or transaction. Agreement ¶ 18(c).

- Postal Notice (using a postcard) will be mailed to any Settlement Class member for whom a mailing address is known (there are 17,303 known postal mailing addresses).  Agreement ¶ 12(a) and Exh. A; Kwan Decl. ¶ 9.  Store Notice will also be posted in the International Marketplace Store at each and every cashier booth (such that each is conspicuously posted and

---

[3] There is a nexis between the Settlement Class and each of Plaintiff's selected charities.  Each Settlement Class member is, by definition, a customer of International Marketplace.  Thus, each Settlement Class member has an interest in food and related goods offered by International Marketplace (Kwan Decl. ¶ 6).  Each of the charities proposed uses food as part of its charitable functions.  For example, as part of rehabilitating and otherwise maintaining the animals they care for, the charities feed the animals which they try to preserve.  Thus, if the charity decided they want to redeem Gift Cards at Defendant's store to obtain meat, produce, etc. to feed animals that they care for, that is a valid and valuable function.  The charities also have volunteers that they try to acquire to fulfill charitable functions.  The charities can thus provide food, etc., to these volunteers so that they can undertake work, whether it is in the desert, etc.  The charities can also use food and food related products in other ways too.  For example, the Las Vegas Valley Humane Society holds "Bake/Craft Sales" and they ask people to "provide goodies for our bake sales every other month" as one way to raise funds. See http://www.lvvhumane.org/volunteer.php. Thus, they can obtain products from Defendant's store for this purpose and/or sell the Gifts Cards.

visible to customers) for a period of one hundred eighty (180) days (180 days is the duration of the claims period).  Agreement ¶ 12(b) and Exh. B.  The Postal Notice and Store Notice shall include the Settlement Website address and toll-free telephone number which Settlement Class members may use to obtain further information.  A viewable and printable on-line long-form notice ("Full Notice"), which will be in the form attached to the Agreement as Exhibit C, will also be made available on the Settlement Website.  Agreement ¶ 12(c).

- Settlement Class members will have one hundred and eighty (180) days from the date of posting the Store Notice at the International Marketplace Store to submit a Claim Form. A Claim Form may be submitted electronically through the Settlement Website, by mail, or by facsimile.  Agreement ¶ 19.

- Settlement Class members will have until sixty (60) days after the date the Store Notice is first posted at the International Marketplace Store to exclude themselves from the Settlement Class (the "Opt-Out Deadline").  Agreement ¶ 13.

- Settlement Class members will have sixty (60) calendar days after the date Store Notice is first posted by International Marketplace to object to the terms of the settlement.  Any such objections must be filed with the Court and also served on Class Counsel and counsel for International Marketplace.  Agreement ¶ 14(a) and [Proposed] Order ¶ 11.

- The Parties have agreed to Dahl Administration LLC as the designated third-party who will act as settlement administrator.  Agreement ¶ 2.B.

- International Marketplace will pay, separately and directly, all costs and expenses of the Class Notice and settlement administration (including, but not limited to, the Postal Notice, Store Notice, Full Notice, the Claims Administrator's fees, costs and expenses, facsimile number, and toll-free call-in number). These fees, costs and expenses shall be separate from, and in addition to, the Class Counsel Attorneys' fees and costs and the Class Representative's incentive award. Agreement ¶ 12.

- Class Counsel will apply to the Court for an incentive (service) award of up to $5,000 to the named Plaintiff, to be paid separately by International Marketplace, to compensate Plaintiff for her services as the Class Representative.  Agreement ¶ 22.

• Class Counsel will apply to the Court for an award of up to $135,000 for attorneys' fees and legal costs, to be paid separately by International Marketplace, to compensate Class Counsel for investigating the facts, prosecuting the lawsuit, negotiating the Settlement, causing International Marketplace to implement a new written policy concerning FACTA, and implementing the settlement.  Agreement ¶ 21.

• Class Counsel's motion for an award of attorneys' fees and costs and the Class Representative's motion for service (or incentive) awards will be posted on the Settlement Website no later than thirty (30) days before the Fairness Hearing scheduled by the Court.  Agreement ¶ 14(b) and [Proposed] Order ¶ 12.  Any objection must be filed and served no later than twenty-one (21) days before the Fairness Hearing.  *Ibid.*

## V.   THE SETTLEMENT CLASS

For the purposes of the Settlement, the Parties have stipulated to the certification of the following Settlement Class: "all consumers who, at any time during the period December 31, 2012 to December 13, 2014 (the 'Settlement Class Period'), were provided an electronically printed receipt at the point of a sale or transaction at the International Marketplace Store, on which receipt was printed more than the last 5 digits of the credit card or debit card number and/or the expiration date of the consumer's credit card or debit card."  Agreement ¶ 2.S.

In reviewing a class action settlement, a "district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  This action meets these governing standards for certification under Rule 23(a) and Rule 23(b)(3).

### A.   Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be

1  impracticable." *Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).[4]

2      In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64,

3  and 71 were large enough such that the other factors need not be considered.  *Ibid.*  "The fact that

4  the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a

5  class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic*

6  *Beverages Litig.*, 95 F.R.D. 321, 324 (D.C. N.Y. 1982); *In re Computer Memories Sec. Litig.*, 111

7  F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact number

8  of class members, but demonstrated that class would "obviously be sufficiently numerous").

9      Here, the 259,696 credit card and debit card receipts (for which approximately 117,000

10  unique credit or debit cards were used) demonstrates that the sheer number of class members

11  easily surpasses the class sizes in *Jordan* which the Ninth Circuit deemed satisfied the numerosity

12  requirement.  Kwan Decl. ¶¶ 7-8; Yedalian Decl. ¶¶ 2-5; Flanagan Decl. ¶¶ 12-15.

13      The fact that, by the very nature of the Settlement Class, many of its members are

14  unknown and cannot be readily identified, further dictates that joinder is impracticable.  *Jordan*,

15  669 F.2d at 1319-1320; Kwan Decl. ¶ 9.

16  **B.  Commonality**

17      Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  This

18  commonality requirement must be "construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d

19  1011, 1019 (9th Cir. 1998).  "All questions of fact and law need not be common to satisfy the rule.

20  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common

21  core of salient facts coupled with disparate legal remedies within the class."  *Ibid.*  Where a class is

22  united by a common interest in determining whether a defendant's broad course of conduct is

23  actionable, commonality is not defeated "by slight differences in class members' positions."

24  *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

25

26  _____

[4] "Where the class is not so numerous, however, the number of class members does not weigh as
27  heavily in determining whether joinder would be infeasible.  In the latter situation, other factors
such as the geographical diversity of class members, the ability of individual claimants to institute
28  separate suits, and whether injunctive or declaratory relief is sought, should be considered in
determining impracticability of joinder."  *Jordan*, *supra*, 669 F.2d at 1319.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

1    "This analysis does not turn on the number of common questions, but on their

2    relevance to the factual and legal issues at the core of the purported class' claims.

3    Compare *Dukes*, 131 S.Ct. at 2556 (**'We quite agree that for purposes of Rule**

4    **23(a)(2), even a single common question will do.'**) (internal quotation marks

5    omitted), *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) ('Plaintiffs

6    need not show that every question in the case, or even a preponderance of questions, is

7    capable of classwide resolution.'), *Mazza*, 666 F.3d at 589 ('[C]ommonality only

8    requires a single significant question of law or fact.'), with *Dukes*, 131 S.Ct. at 2551

9    ('What matters to class certification is not the raising of common `questions'—even in

10   droves.')" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

11   Commonality cannot be disputed here.  All class members share two common legal

12   questions – whether International Marketplace violated FACTA by printing the expiration date

13   and more than the last 5 digits of debit and credit cards on receipts, and whether its practice of

14   doing so was "willful."  None of the relevant questions relates to the conduct of the class

15   members, but rather all focus on International Marketplace's conduct and culpability in violating

16   FACTA. See, *e.g.*, *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883 *5 (C.D. Cal. 2009),

17   petition for permission to appeal grant of certification denied October 20, 2009, 9th Cir. Docket

18   No. 09-80132 ("The overriding legal issue is whether [defendant']s alleged noncompliance was

19   willful so that the class members are entitled to statutory damages.  Moreover, whether

20   [defendant] violated FACTA is a combined question of law and fact common to all members.");

21   *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113 *2 (C.D. Cal. 2007) ("There is a common

22   core of salient facts across the class.  Each member of the proposed class received a non-compliant

23   receipt from [Defendant] after the applicable compliance deadline."); *Kesler v. Ikea U.S., Inc., et*

24   *al.*, 2008 WL 413268 *3 (C.D. Cal. 2008) ("In this case, the facts and legal issues of each class

25   member's claim are nearly, if not entirely, identical.  There is a common core of salient facts

26   across the class.  Each member of the proposed class received a non-compliant receipt from IKEA

27   after the December 4, 2006 FACTA compliance deadline.  The overriding legal issue is whether

28   IKEA's noncompliance was willful, so that the class members are entitled to statutory damages.")

### C.      **Typicality**

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims ... of the class."  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020. Named plaintiffs need not be "identically situated" with all other class members; rather, "[i]t is enough if their situations share a 'common issue of law or fact' [citation] and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'"  *Cal. Rural Legal Assistance, Inc. v. Legal Services. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).  Moreover, typicality refers to the "nature of the claim … of the class representative, and not to the specific facts from which it arose or the relief sought."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ibid*.

Here, Plaintiff and all other class members allege the same injury, violation of their FACTA rights resulting from the same course of conduct — the printing of their card expiration date and more than the last 5 digit of their card number on credit or debit card receipts. Accordingly, this lawsuit is based on conduct which is not unique to Plaintiff, but on standardized, uniform conduct that is common to all class members.  Moreover, the same relief, specifically, statutory damages under 15 U.S.C. § 1681n, is sought for all class members for International Marketplace's "willful" violation of FACTA.  Accordingly, the typicality requirement is satisfied. *Tchoboian*, 2009 WL 2169883 *5 (C.D. Cal. 2009) (holding that typicality is satisfied because "[Plaintiff]'s claim is, in fact, 'substantially identical' to the claims of the proposed class members- namely, he alleges that [defendant] issued him a noncompliant receipt in willful violation of the FACTA"); *Medrano*, 2007 WL 4592113 *3 (same); *Kesler*, 2008 WL 413268 *4 (same); *Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608 *5 (N.D. Ill. 2007) ("*Murray II*") (typicality satisfied where, despite minor factual discrepancies, all putative class members had "the same essential characteristics"); *In re Activision Securities Litigation*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only material variation among class members is the amount of damages to

- 11 -

1  which each member is entitled" and that "[s]uch differences are insufficient to defeat class
2  certification.")

3      **D.    <u>Adequate Representation</u>**

4      Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the
5  interests of the class."  Representation is adequate if (1) class counsel is qualified and competent
6  and (2) the class representative and his or her counsel are not disqualified by conflicts of interest.
7  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

8      Here, there are no conflicts of interest between Plaintiff and Settlement Class members.
9  Plaintiff and each class member assert identical claims for statutory damages arising from the
10  same facts, *i.e.*, International Marketplace's printing of the expiration date and more than the last 5
11  digits of the respective credit or debit card on receipts.  Thus, there is no potential for conflicting
12  interests in this action.  *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (no
13  conflict where claims asserted by plaintiff and class members arise from defendants' use of form
14  letters allegedly violating the Fair Debt Collection Practices Act).  Moreover, there is no basis for
15  asserting against Plaintiff any unique defenses that International Marketplace could not assert
16  against any other Settlement Class member.  Nor is there any basis to suggest that Plaintiff lacks
17  sufficient zeal or competence.

18      Nor are their any conflicts with Plaintiff's counsel.  Plaintiff is represented by highly
19  capable and competent counsel experienced in class action litigation, including FACTA lawsuits.
20  Yedalian Decl. ¶¶ 51-65.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*
21  *Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel
22  were experienced practitioners).

23      **E.    <u>Rule 23(b)(3) Requirements Are Met</u>**

24      The Parties seek certification pursuant to Rule 23(b)(3), which authorizes certification if
25  "the court finds that the questions of law or fact common to class members predominate over any
26  questions affecting only individual members, and that a class action is superior to other available
27  methods for fairly and efficiently adjudicating the controversy."  FRCP 23(b)(3).  Rule 23(b)(3)'s
28  predominance and superiority factors are satisfied.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

### 1.     Predominance of Common Questions

To satisfy predominance, common questions of law or fact must "present a significant aspect of the case" and be capable of resolution "in a single adjudication." *Hanlon*, 150 F.3d at 1022-1023; *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

In this case, whether International Marketplace violated FACTA "willfully" is the central issue that clearly predominates over any individual issues.  Whether International Marketplace did so depends upon facts concerning its own conduct — conduct that applies uniformly to all class members in this case.

That common issues predominate is also bolstered by the fact that the available remedy in this case is statutory damages.  As the Ninth Circuit explained in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010), "irrespective of whether Bateman and all the potential class members can demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages."

That common issues predominate is also evidenced by the fact that all class members' claims involve the very same conduct by International Marketplace —the printing of receipts which contain the credit or debit card's expiration date and more than the last 5 digits.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

### 2.     Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alterative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority

requirement.   "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."  *Culinary/Bartender Trust Fund*, 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

In *Local Joint Executive Board of Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330.  Here, class members can recover, at most, statutory damages in an amount between $100 and $1,000 per violation.   As in *Culinary/Bartender Trust Fund*, "This case involves multiple claims for relatively small individual sums…. If plaintiffs cannot proceed as a class, some-perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. 'Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'"  *Id*. at 1163; see also *Hanlon*, 150 F.3d at 1023 (explaining that "In this sense, the proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir. 2010); ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009)  ("policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").  In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the FCRA[5], the Seventh Circuit held as follows: "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

The Supreme Court has similarly held.  *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797, 809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs

---

[5]  "FACTA and other provisions of the FCRA [the Fair Credit Reporting Act] share the same statutory damages provision, see 15 U.S.C. § 1681n."  *Bateman, supra*, 623 F.3d at 715.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

totaled $1,006.00.  Such plaintiffs would be unlikely to obtain legal redress…. This, of course, is a central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount.  Economic reality dictates that petitioner's suit [involving individual damage of $70] proceed as a class action or not at all").

In sum, as the Ninth Circuit explained in another FACTA case, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman*, 623 F.3d at 722.

The above authorities clearly dictate that the superiority requirements of Rule 23(b)(3) are satisfied here.

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are (A) the interest of class members in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by other class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  However, when a court reviews a class action settlement, the fourth factor does not apply.  In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems."  *Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997).  The remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

First, class members have no particular interest in individually controlling the prosecution of separate actions.  Statutory damages cannot exceed $1,000, and the fact of the matter is that there is no other known separate action filed or prosecuted by any other class members. Moreover, any Settlement Class member who desires to pursue actual damages could opt out of the Settlement.

Second, and as explained above, the Parties are not aware of any other litigation regarding the FACTA violations at issue in this case.

Third, it is desirable to concentrate the litigation in this forum because International

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

Marketplace resides in Nevada and the alleged FACTA violations involve the International Marketplace store in Nevada and within this district where the receipts were issued.  Moreover, Plaintiff and International Marketplace have reached a Settlement.  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious."  *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133747 *19 (M.D. Fla. 1998); *Strube v. American Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").

The conclusion is inescapable that there simply is no better method than a class action for resolving all the claims of the Settlement Class Members in this case.  The conclusion of the court in *Murray II*, where the court certified a case involving claims for statutory damages under the FCRA, applies equally here:

> "This is a case where class certification presents the most efficient means of adjudicating the controversy.  The class is numerous but the potential recovery for each class member is quite small.  Indeed, it is exceedingly unlikely that many individuals would wish to go to court for a potential recovery of $100-or that they could find counsel willing to represent them." *Murray II*, 2007 WL 1100608 *7.

Finally, FACTA is a consumer protection statute which serves not just to compensate, but also to "deter" future violations.  *Bateman*, 623 F.3d at 718.  As the Ninth Circuit has also explained, this "deterrent purpose" of FACTA is served by certification: "we are quite sure that certification of a class here would preserve, if not amplify, the deterrent effect of FACTA." *Id.* at 723.

## VI.     THE TWO-STEP APPROVAL PROCESS

There is a "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of continued litigation.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

A settlement of class litigation must be reviewed and approved by the Court.  FRCP Rule 23(e).  This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

1   review after notice has been distributed to the class members for their comment or objections.

2   This Motion concerns the first step.

3   "The first step is a preliminary, pre-notification hearing to determine whether the proposed

4   settlement is 'within the range of possible approval.'" *Armstrong v. Board of School Directors of*

5   *the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting Manual for Complex Litigation

6   § 1.46, at 53-55 (West 1977)).  The purpose of this hearing is "to ascertain whether there is any

7   reason to notify the class members of the proposed settlement and to proceed with a fairness

8   hearing." *Ibid.*  "[I]f the proposed settlement appears to be the product of serious, informed, non-

9   collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

10  treatment to class representatives or segments of the class, and falls within the range of possible

11  approval, then the court should direct that the notice be given to the class members of a formal

12  fairness hearing.'" *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529 at * 5 (N.D. Cal.

13  2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

14  At the second step of the approval process (usually referred to as the fairness hearing or

15  final approval hearing), after class members have been notified of the proposed settlement and

16  have had an opportunity to be heard, the court makes a final determination whether the settlement

17  is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314.

18  Thus, the preliminary approval of the trial court is simply a conditional finding that the

19  settlement appears to be within the range of acceptable settlements.  As Professor Newberg

20  comments, "The strength of the findings made by a judge at a preliminary hearing or conference

21  concerning a tentative settlement proposal may vary.  The court may find that the settlement

22  proposal contains some merit, is within the range of reasonableness required for a settlement

23  offer, or is presumptively valid subject only to any objections that may be raised at a final

24  hearing." *Newberg on Class Actions*, 4th Ed., § 11:26.

25  **VII.   THE PRESUMPTION OF FAIRNESS**

26  Courts presume the absence of fraud or collusion in the negotiation of a settlement unless

27  evidence to the contrary is offered.  In short, there is a presumption that the negotiations were

28  conducted in good faith. *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957,

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been intimately involved in this litigation. *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. [citation.] This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also Newberg*, § 11:47.

As further explained below, this presumption of fairness is further bolstered by the fact that the Settlement was reached through the extensive negotiations that occurred with the assistance of a mediator, Judge Pro (Ret.). *Satchell v. Fed. Express Corp.*, 2007 WL 1114010 *4 (N.D. Cal. 2007).

## VIII. THIS SETTLEMENT IS FAIR AND REASONABLE

The Settlement is well within the range of reasonableness and preliminary approval should be granted. No single criterion determines whether a class action settlement meets the requirements of Rule 23(e). In connection with final approval determinations, the Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *Staton*, *supra*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and

circumstances presented by each individual case."   *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "one factor alone may prove determinative in finding sufficient grounds for court approval."   *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest. *Staton*, 327 F.3d at 961.  Some of the factors which were considered in evaluating the reasonableness of this Settlement are as follows:

### A.   Risks of Continuing Litigation

Absent this Settlement, there are very real risks involved in continued litigation, including extensive delays, potential appeals and the possibility that Settlement Class members may ultimately end up with no recovery.  Yedalian Decl. ¶ 21.

#### 1.   "Willfulness"

In order to recover any statutory damages and other remedies under 15 U.S.C. § 1681n, Plaintiff must show that International Marketplace engaged in "willful" conduct.  However, International Marketplace has vigorously denied that its conduct was willful.  Yedalian Decl. ¶ 19. In contrast, Plaintiff believes, among other things, that the printing of the expiration date and more than the last 5 digits of the card number was reckless and obvious to International Marketplace and

1   the result of a lack of adequate measures to safeguard consumer rights.  *Ibid.*

2       Regardless of how strongly the Parties feel about the merits, the Parties face issues and

3   risks concerning how the legal requirements for a "willful" violation of FACTA will be applied to

4   the particular facts of this case.  Yedalian Decl. ¶ 20.

5                    **2.        Class Certification**

6       The Parties have sharply divergent positions on class certification in this case, absent a

7   settlement.  International Marketplace has denied that for any purpose other than that of settling

8   this lawsuit, this action is appropriate for class treatment.  Agreement ¶ 4; Yedalian Decl. ¶ 21.

9       Plaintiff believes that the Ninth Circuit's decision in *Bateman v. American Multi-Cinema,*

10  *Inc.*, 623 F.3d 708 (9th Cir. 2010), which reversed the denial of class certification in another

11  FACTA case, strongly supports certification in this case.  Yedalian Decl. ¶ 22.

12      Yet, absent a settlement, class certification remains a hotly contested matter in this case,

13  and there are risks attendant in continued litigation of these issues, including, at a minimum,

14  delays and potential appeals.  Yedalian Decl. ¶ 23.

15      For example, after the Ninth Circuit's decision in *Bateman*, one district court within the

16  Central District denied class certification in a FACTA case, *Martin v. Pacific Parking Systems,*

17  *Inc.*, 2012 WL 2552694 (C.D. Cal. July 2, 2012).   On September 6, 2012, the Ninth Circuit

18  granted a Rule 23(f) petition for permission for discretionary leave to appeal the district court's

19  denial of certification in *Martin* (9th Cir. Docket No. 12-80144), and on appeal it was held that the

20  district court did not abuse its discretion based upon the facts in that case.  2014 WL 3686135

21  (July 25, 2014).  Yedalian Decl. ¶ 24.

22      In sum, while Plaintiff feels strongly about certification in this case, *Martin* is an example

23  of a FACTA case demonstrating the risks inherent in certification, including, at a minimum,

24  delays and potential appeals.  Yedalian Decl. ¶ 25.

25          **B.        Substantial Benefits of Settlement Compared to Risks of Continued Litigation**

26      The Settlement provides for substantial benefits.

27      The settlement provides that each Settlement Class member who submits a valid and

28  timely claim will be entitled to receive one Gift Card in the amount of $50.  Agreement ¶ 18(a).

Further, the Settlement provides for a guaranteed *minimum* of 10,000 Gift Cards to be distributed and establishes a *cy pres* mechanism to ensure distribution.  Agreement ¶ 18(b).  Additionally, International Marketplace will pay, separately and directly, all costs and expenses of the Class Notice and settlement administration (including, but not limited to, the Postal Notice, Store Notice, Full Notice, the Claims Administrator's fees, costs and expenses, facsimile number, and toll-free call-in number).  Agreement ¶ 12.  The Parties have agreed to Dahl Administration LLC as the designated third-party who will act as settlement administrator ("Claims Administrator").  Agreement ¶ 2.B.  Based upon the administration of 17,303 known postal mailing addresses alone, the Claims Administrator provided a quote of $ 21,851 to defense counsel.  Yedalian Decl. ¶ 44.

Further, the value of the International Marketplace Gift Card is considerable in that it is 50% of the minimum statutory damages ($100) available for a willful violation of FACTA.  Although compared to the maximum possible recovery of $1,000 in statutory damages, $50.00 is a 5% value (which is not insubstantial), the propriety of awarding *full* statutory damages to Settlement Class members who do not claim actual monetary loss is strongly disputed.  Many FACTA defendants have argued that lack of "actual harm" precludes, if not any award of statutory damages to begin with, at the very least "excessive" statutory damages.  Since it remains to be seen how courts will resolve such constitutional challenges to statutory damage awards under FACTA, the value negotiated by the Parties represents a fair compromise well within the range of reasonableness.  Yedalian Decl. ¶ 28.

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."  *Officers for Justice*, *supra*, 688 F.2d at 625.  Moreover, as long as the Settlement is reasonable, it does not matter that under the best case scenario, the potential value of the case may be much higher.  *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

The $50 Gift Card is also reasonable when compared to the value of similar benefits in

- 21 -

other FACTA cases.  For example, in *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438, 447 (C.D. Cal. January 17, 2014), the Court found that the benefit of vouchers having a maximum combined value of $30.00 was reasonable in a case alleging nationwide FACTA violations against a much larger corporate defendant.

Another benefit of this lawsuit and settlement is the fact that, as part of the settlement, International Marketplace shall implement a written FACTA compliance policy, stating that it shall comply with FACTA, 15 U.S.C. Section 1681c(g), and that it shall not print more than the last five digits of the credit or debit card number nor the credit or debit card expiration date upon any electronically printed receipt provided to any credit or debit cardholder at the point of any sale or transaction. Agreement ¶ 18(c).  This FACTA compliance policy ensures that International Marketplace will not continue to violate the law, willfully, inadvertently or otherwise.  Yedalian Decl. ¶ 29.

Such non-pecuniary benefits are properly considered in judging the results of the lawsuit. *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue).  This is especially true with a consumer protection statute such as FACTA which, as the Ninth Circuit has held, serves both a compensatory and "deterrent purpose." *Bateman*, 623 F.3d at 718.  "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'" *Ibid.*  The non-pecuniary benefits achieve that substantial purpose.

The importance of such non-pecuniary benefits was also recently explained by the Ninth Circuit in a case involving another consumer protection statute, the Fair Debt Collection Practices Act:

"The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like Lemberg to act as private attorney generals to pursue FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to benefit from this case.  Mickell admits that he has ceased his practice of sending letters to debtor's workplaces, a benefit to all class members.  Furthermore, certifying

- 22 -

1  the class will serve a 'deterrent' component to other debt collectors who are engaging,

2  or consider engaging in this type of debt collection tactic."  *Evon v. Law Offices of*

3  *Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

4  **C.    Agreement Provides That Change Of Law Before Final Approval**

5  **of Settlement Will Not Compromise Settlement Class Members' Benefits**

6      A further benefit of the settlement assures that if there is an intervening change of law

7  before final approval of the settlement, the settlement and settlement benefits will continue to

8  remain valid, enforceable and available to Settlement Class members.  Agreement ¶ 41.

9      The significance of this benefit cannot be understated.  For example, as explained by the

10  Ninth Circuit in *Bateman*, in 2008 (while many FACTA lawsuits were then pending) Congress

11  enacted the Credit and Debit Card Receipt Clarification Act ("Clarification Act").    The

12  Clarification Act retroactively granted a *temporary* immunity from statutory damages for FACTA

13  violations to those defendants that printed an *expiration date* "between December 4, 2004, and

14  June 3, 2008 [the date the Clarification Act was enacted]."  *Bateman*, *supra*, 623 F.3d at 717.  As a

15  result of the change of law imposed by the Clarification Act, many FACTA class action cases

16  were dismissed without any recovery for consumers.  Yedalian Decl. ¶ 31.

17      The risks posed by potential changes in the law through judicial opinions likewise cannot

18  be understated, particularly in the dynamic area of statutory damage issues.  For example, in a case

19  involving another statute, the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the

20  Ninth Circuit reaffirmed the principle that a violation of statute gives rise to Article III standing,

21  even in the absence of actual monetary damages: "The injury required by Article III can exist

22  solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"

23  *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010).  However, the United States

24  Supreme Court granted *certiorari* in the *Edwards* case to consider the Article III standing issue.

25  *First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (June 20, 2011). The Supreme Court's anticipated

26  decision was expected to have potentially far reaching effects in the area of statutory damage

27  cases.    The Supreme Court's grant of *certiorari* caused substantial uncertainty and provided

28  defendants facing statutory damage allegations with a potential defense that the law may change.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

On the last day of the Supreme Court's term, the Supreme Court dismissed the writ of certiorari as improvidently granted.  *First Am. Fin. Corp. v. Edwards*, 132 S.Ct. 2536, 2537 (June 28, 2012).  Thus, while no change of law occurred as a result of the Supreme Court's actions in *Edwards*, these events likewise demonstrate the potential for changes in law and the real benefits conferred by the settlement which safeguards against any such potential changes.  Yedalian Decl. ¶ 32.

Indeed, the issue of statutory damages is once again before the Supreme Court as a result of *certiorari* granted in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014).  See *Spokeo, Inc. v Robins*, 135 S.Ct. 1892 (*certiorari* granted April 27, 2015).

### D.   The Settlement Is The Product of Extensive Arm's-Length Negotiations

The Agreement is the product of extensive, adversarial, arm's-length discussions, negotiations, correspondence, factual and legal investigation and research, and careful evaluation of the respective parties' strengths and weaknesses.  Yedalian Decl. ¶¶ 33-37.

The Agreement was also reached through the extensive negotiations that occurred with the assistance with the mediator, Judge Pro. (Ret.).  Yedalian Decl. ¶¶ 6-14. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010 *4 (N.D. Cal. 2007).

## IX.   PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED

Rule 23(e)(1) provides that: "The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice that is practicable under the circumstances."  Like Rule 23(e)(1), Rule 23(c)(2)(B) does not require actual notice or that a notice be actually received. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, except for those members who have joined International Marketplace's membership plan (for which 17,303 mailing addresses are known) International Marketplace does not know,

- 24 -

nor does it have access to postal addresses, email addresses, telephone numbers or facsimile numbers of any of its non-member customers.  Kwan Decl. ¶ 9.  The Parties have therefore agreed that notice to the Settlement Class members will be given in the following ways:

**Postal Notice**

Postal Notice (using a postcard) will be mailed to any Settlement Class member for whom a mailing address is known.  Agreement ¶ 12(a) and Exh. A; Kwan Decl. ¶ 9.

**Store Notice**

Store Notice will also be posted in the International Marketplace Store at each and every cashier booth (such that each is conspicuously posted and visible to customers) for a period of one hundred eighty (180) days (180 days is the duration of the claims period).  Agreement ¶ 12(b) and Exh. B.  Both the Postal Notice and Store Notice shall include the Settlement Website address and toll-free telephone number which Settlement Class members may use to obtain further information.  Agreement ¶¶ 12(a) and (b) and Exh. A and B.

**Settlement Website Notice**

A Settlement Website shall be established and maintained by the Claims Administrator and it will contain a summary description of the settlement terms and summarize options available to Settlement Class members.  Agreement ¶¶ 2.T. and 12(c).

**Full Notice and Claim Form**

The Settlement Website will also provide, free of charge, viewable, printable, and downloadable copies of relevant documents, including the Full Notice and Claim Form.  Further, Settlement Class members also have the option of submitting their claim through the Settlement Website, by completing and submitting an electronic version of the Claim Form on the internet through the Settlement Website.  Agreement ¶¶ 12(c) and 19(c).

In a case like this, where neither the names nor addresses of all Settlement Class members can be ascertained despite reasonable effort, notice by publication and website clearly suffices.  *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (notice by publication and website adequate where individual notice impossible; also recognizing increasing importance of website notice as a substitute form of notice); *Battle v. Liberty National Life Ins. Co.*, 770 F.Supp.

1499, 1515, fn.47 (N. D. Ala. 1991) (individual notice not required where absent members are not identified and cannot be located through diligent efforts) *affirmed*, 974 F.2d 1279 (11th Cir. 1992). The conspicuous and continuous (180-day) posting of notices at the International Marketplace Store, which targets Settlement Class members who have a history of visiting such location, in addition to the Postal Notice and Settlement Website notice, leaves no room for doubt that the Parties have agreed to provide the best notice under the circumstances.

## X.   REASONABLE ATTORNEYS' FEES AND COSTS WILL BE SOUGHT IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

At the time of final approval of the Settlement, Class Counsel will request an award of attorneys' fees and costs in the amount of $135,000 (Agreement ¶ 21) to compensate Class Counsel for fees and costs incurred in investigating the facts, prosecuting the lawsuit, negotiating the settlement, drafting the settlement documents, attempting to obtain the Court's preliminary and final approval of the settlement, causing International Marketplace to implement a new written policy concerning FACTA, and ensuring that the settlement is properly implemented. Yedalian Decl. ¶ 38.

While, in connection with final approval, Class Counsel intends to substantiate fees by providing an account of time devoted to this case, there are a few things worth mentioning now concerning fees.

The attorneys' fees and costs will be paid separately by International Marketplace. Agreement ¶ 21.  Thus, they will not affect the available benefits to the Settlement Class. *Ibid.*

Attorneys' fees and costs were negotiated only after negotiations had already concluded and agreement had been reached on Settlement Class benefits.  Yedalian Decl. ¶¶ 41, 10-14. Moreover, as discussed above, the negotiations and agreement on class benefits occurred through the assistance of the mediator, Judge Pro (Ret.).  Yedalian Decl. ¶¶ 10-14.

If the $135,000 award were added to the *minimum* $500,000 Gift Card distribution required by the settlement, for a total of $635,000, then $135,000 would represent a 21.3% fees and costs award.  Yedalian Decl. ¶ 42.

Consideration of the other valuable benefits of this settlement, which obviously have

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

additional value, would result in the fees and costs award representing less than 20% of the overall benefits to the Settlement Class.  Yedalian Decl. ¶ 43.

More specifically, International Marketplace has agreed to separately pay up to an additional $5,000 as an incentive award, and International Marketplace will pay, separately and directly, all costs and expenses of the Class Notice and settlement administration (including, but not limited to, the Postal Notice, Store Notice, Full Notice, the Claims Administrator's fees, costs and expenses, facsimile number, and toll-free call-in number).  Agreement ¶ 22 and ¶ 12(b).  As far as the Claims Administrator's portion of these fees, costs and expenses, based upon the administration of 17,303 known postal mailing addresses alone, the Claims Administrator provided a quote of $21,851 to defense counsel.  Yedalian Decl. ¶ 44.  Thus, because the Settlement Class also includes members whose postal mailing addresses are not known, Class Counsel expects that the actual amount ultimately charged by the Claims Administrator will exceed the $21,851 quote.  Yedalian Decl. ¶ 44.

In addition, there are also non-pecuniary benefits resulting from the fact that the Settlement requires International Marketplace to implement a written FACTA compliance policy. *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue and explaining that "'Attorneys' fees [in class action cases] may be awarded even though the benefit conferred is purely non-pecuniary in nature.'").

It should also not be lost on the Court that Class Counsel has borne, and continues to bear, the entire risk of litigation associated with the lawsuit on a pure contingency basis, and that as a result of the time committed by Class Counsel to this matter, Class Counsel was precluded from taking on other matters which were available.   Yedalian Decl. ¶ 46.

Again, Class Counsel will address these issues in further detail when requesting fees in connection with final approval, but believed it was important at this juncture to at least provide the Court with a basic summary of the rationale and reasons for the requested fee amounts.

The fees and costs that will be requested in connection with final approval are reasonable and further justified by the results achieved, the time incurred and risks undertaken.

## XI.   A REASONABLE INCENTIVE AWARD WILL BE SOUGHT FOR THE NAMED PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

At the time of final approval of the Settlement, Class Counsel will request, on behalf of the named plaintiff, Cirena Torres, an incentive (service) award of $5,000 (Agreement ¶ 22), to compensate for her services as the representative of the Settlement Class.  Plaintiff was subjected to the risk of intrusive discovery, risked liability for defense costs in the event the litigation was unsuccessful, and contributed valuable time and resources during the pendency of the litigation, all of which will be further detailed in connection with final approval proceedings.  Yedalian Decl. ¶ 49.

"Incentive *awards* are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Ibid.*

In *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  In *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995), a $50,000 incentive award was approved for similar participation.

The requested enhancement award in the amount of $5,000 to the single Class Representative is modest, reasonable, and should be approved in connection with final approval.

## XII.   CONCLUSION

The proposed class action settlement is well within the range of reasonable settlements.  It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by experienced counsel and with the assistance of mediator, Judge Pro (Ret.).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement, sign and enter the proposed Order, and set a final approval hearing on or about 105 days after the date that the Court grants preliminary approval of the settlement.

Respectfully submitted,

DATED:  October 15, 2015          CHANT & COMPANY
                                  A Professional Law Corporation


                                  By:   /S/ – Chant Yedalian
                                        Chant Yedalian
                                  Counsel For Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Court using the CM/ECF system which will send notification of such filing to the electronic service list for this case.

Dated:  October 15, 2015                CHANT & COMPANY
                                        A Professional Law Corporation


                                        By:   /S/  Chant Yedalian
                                              Chant Yedalian

- 29 -