1  DAVID A. CARROLL, ESQ.
   Nevada State Bar No. 7643
2  ANTHONY J. DIRAIMONDO, ESQ.
   Nevada State Bar No. 10875
3  **RICE REUTHER SULLIVAN & CARROLL, LLP**
   3800 Howard Hughes Parkway, Suite 1200
4  Las Vegas, Nevada 89169
   Telephone: (702) 732-9099
5  Facsimile: (702) 732-7110

6  RACHEL KINGREY, ESQ. (*Pro Hac Vice*)
   **GARDERE WYNNE SEWELL LLP**
7  1601 Elm Street, Suite 3000
   Dallas, Texas 75201
8  Telephone: (214) 999-3000
   Facsimile: (214) 999-4667
9  *Attorneys for Kwong Yet Lung Co., Inc. d/b/a International Marketplace*

10 CHANT YEDALIAN, ESQ. (*Pro Hac Vice*)
   **CHANT & COMPANY**
11 **A Professional Law Corporation**
   1010 N. Central Ave.
12 Glendale, CA 91202
   Phone: 877.574.7100
13 Fax: 877.574.9411

14 KENNETH M. ROBERTS, ESQ.
   Nevada State Bar No. 4729
15 **DEMPSEY, ROBERTS & SMITH, LTD.**
   1130 Wigwam Parkway
16 Henderson, NV  89074
   Phone: 702.388.1216
17 Fax: 702.388.2514
   *Attorneys for Plaintiff Cirena Torres and the Settlement Class*

18                **UNITED STATES DISTRICT COURT**

19                      **DISTRICT OF NEVADA**

20 CIRENA TORRES, on behalf of herself and )   Case No.: 2:14-CV-02223-MMD-PAL
   all others similarly situated,          )
21                                         )   **NOTICE OF MOTION AND MOTION FOR**
                       Plaintiff,          )   **FINAL APPROVAL OF CLASS ACTION**
22                                         )   **SETTLEMENT**
   v.                                      )
23                                         )   [Filed concurrently with Supplemental
   KWONG YET LUNG CO., INC. (d/b/a         )   Declaration of Joyce Kwan, Declaration of Kelly
24 International Marketplace), and DOES 1   )   Kratz, Declaration of Chant Yedalian, Declaration
   through 100, inclusive,                 )   of Rachel Kingrey, and [Proposed] Order and
25                                         )   Judgment, lodged herewith]
                       Defendants.         )
26 _____)   **HEARING**
                                               Date:    February 11, 2016
27                                             Time:    1:00 p.m.
                                               Courtroom: To Be Determined
28                                             Judge: Hon. Miranda M. Du

---

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on February 11, 2016 at 1:00 p.m. or as soon thereafter as the matter may be heard before the Honorable Miranda M. Du in a Courtroom (which is to be determined by the Court), located at 333 S. Las Vegas Blvd., Las Vegas, Nevada 89101, Plaintiff, Cirena Torres, on behalf of herself and on behalf of the Settlement Class, and Defendant Kwong Yet Lung Co., Inc. (d/b/a International Marketplace) will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, for an Order and Judgment granting final approval of the proposed class action settlement on the terms and conditions set forth in the Stipulation And Settlement Agreement (hereinafter sometimes referred to as "Settlement Agreement" or "Agreement"), a copy of which is attached hereto as Exhibit 1.[1]

Plaintiff further moves the Court for an Order:

1.   Confirming its previous findings that the requirements for class certification, for settlement purposes, are satisfied;

2.   Certifying the Settlement Class for settlement purposes;

3.   Appointing Plaintiff Cirena Torres, as the Class Representative for the Settlement Class;

4.   Appointing attorney Chant Yedalian of Chant & Company A Professional Law Corporation and attorney Kenneth M. Roberts of Dempsey, Roberts & Smith, Ltd. as Class Counsel for the Settlement Class;

5.   Finding that the Settlement is fair, adequate and reasonable and complies with Rule 23(e) of the Federal Rules of Civil Procedure;

6.   Finding that the notice of Settlement directed to the Settlement Class members has been completed in conformity with the Court's orders;

7.   Binding all Settlement Class members who did not timely exclude themselves from the settlement to the Settlement Agreement, including the releases contained in paragraphs 24 and 25 of the Settlement Agreement;

---

[1] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

8.    Directing the Parties and the Claims Administrator, Dahl Administration LLC, to effectuate all terms of the Settlement Agreement;

9.    Providing that each of the Parties is to bear its own fees and costs except as expressly provided in the Settlement Agreement or in the Court's order(s) on Motion For Award Of Attorneys' Fees And Costs To Class Counsel And Incentive Payment To The Class Representative; and

10.   Dismissing the Action with prejudice in accordance with the terms of the Settlement Agreement; however, the Court shall retain continuing jurisdiction: (i) to decide the Motion For Award Of Attorneys' Fees And Costs To Class Counsel And Incentive Payment To The Class Representative and make and enter an order(s) wherein the Court will determine the amount of attorneys' fees and costs to award to Class Counsel and the amount of the incentive payment to award to the Class Representative, and (ii) to interpret, implement and enforce the settlement, and all orders and judgment entered in connection therewith.

This Motion is based upon this Notice of Motion and Motion and Exhibit 1 attached hereto, the Declarations and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

DATED:  January 8, 2016          CHANT & COMPANY
                                 A Professional Law Corporation


                                 By:   /S/ – Chant Yedalian
                                         Chant Yedalian
                                 Counsel For Plaintiff and the Settlement Class

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION…………………………………………………………………1

II.     FACTUAL SUMMARY…………………………………………………….... 1

III.    SETTLEMENT DISCUSSIONS, INCLUDING THE MEDIATION…...……...…………3

IV.     NOTICE HAS BEEN PROVIDED TO SETTLEMENT CLASS MEMBERS IN
        CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE CLASS
        MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED TO BE HEARD………..4

        A.      No Opt-Outs……………………………………………………………...5

        B.      No Objections……………………………………………………………5

        C.      No Notice of Intention to Appear…………………………………………...6

V.      CAFA NOTICE HAS BEEN PROVIDED TO THE APPROPRIATE
        GOVERNMENT OFFICIALS AND THEY HAVE NOT OBJECTED OR
        INTERVENED……………………………………………………………………...6

VI.     THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO APPEAR
        PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT…………………………6

VII.    THE SETTLEMENT……………………………………………………………7

VIII.   THE SETTLEMENT CLASS…………………………………………………11

        A.      Numerosity…………………………………………………………...11

        B.      Commonality……………………………………………………………12

        C.      Typicality…………………………………………………………………14

        D.      Adequate Representation……………………………………………………15

        E.      Rule 23(b)(3) Requirements Are Met……………………………………15

                1.      Predominance of Common Questions……………………………16

                2.      Superiority…………………………………………………………16

IX.     THE TWO-STEP APPROVAL PROCESS……………………………………19

X.      THE PRESUMPTION OF FAIRNESS…………………………………………...20

//

//

i

1

# <u>TABLE OF CONTENTS</u>

2

**Page**

3
XI.    THIS SETTLEMENT IS FAIR AND REASONABLE………………………………..21

4
A.    Risks of Continuing Litigation…………………………………………………22

5
1.    "Willfulness"……………………………………………………………22

6
2.    Class Certification…………………………………………………………22

7
B.    Substantial Benefits of Settlement Compared to Risks of Continued Litigation….23

8
C.    Agreement Provides That Change Of Law Before Final Approval
       of Settlement Will Not Compromise Settlement Class Members' Benefits……….25

9

D.    The Settlement Is The Product of Extensive Arm's-Length Negotiations………..26

10
E.    The Findings Made In This Court's Orders Granting Preliminary Approval

11
       Likewise Support The Grant of Final Approval……………………………………..27

12
F.    The Lack Of Any Opt-Outs, Objections And Requests To Appear Also
       Supports The Grant of Final Approval……………………………………………27

13
XII.    CONCLUSION……………………………………………………………………27

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                               **Page(s)**

*Abels v. JBC Legal Group, P.C.*
       227 F.R.D. 541 (N.D. Cal. 2005)…………………………………………………….15

*Amchem Products Inc. v. Woodward*
       521 U.S. 591 (1997)…………………………………………………………………18

*Armstrong v. Board of School Directors of the City of Milwaukee*
       616 F.2d 305 (7th Cir. 1980)……………….……………………………………...20

*Bateman v. American Multi-Cinema, Inc.*
       623 F.3d 708 (9th Cir. 2010)…………………......................16, 17, 18, 19, 22, 23, 25, 26

*Blackie v. Barrack*
       524 F.2d 891 (9th Cir. 1975)……………………………………………………….12

*Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*
       917 F.2d 1171 (9th Cir. 1990)………………………………….............................14

*Chalk v. T-Mobile USA, Inc.*
       560 F.3d 1087 (9th Cir. 2009)……………………………….……………………17

*Class Plaintiffs v. City of Seattle*
       955 F.2d 1268 (9th Cir. 1992)……………………………………………………...19

*Craft v. County of San Bernardino*
       624 F.Supp.2d 1113 (C.D. Cal. 2008)…………………………….........................25

*Deposit Guar. Nat'l Bank v. Roper*
       445 U.S. 326 (1980)………………………………………………….................17-18

*Edwards v. First Am. Corp.*
       610 F.3d 514, 517 (9th Cir. 2010)…………………………………………………26

*Eisen v. Carlisle & Jacquelin*
       417 U.S. 156 (1974)…………………………………………………………...11, 18

*Elkins v. Equitable Life Ins. of Iowa*
       1998 WL 133747 (M.D. Fla. 1998)……………………………………………….19

*Evon v. Law Offices of Sidney Mickell*
       688 F.3d 1015 (9th Cir. 2012)……………………………………………………25

*First Am. Fin. Corp. v. Edwards*
       131 S.Ct. 3022 (June 20, 2011)…………………………………………………...26

*First Am. Fin. Corp. v. Edwards*
       132 S.Ct. 2536, 2537 (June 28, 2012)……………………………………………26

iii

**Page(s)**

*Hammon v. Barry*
    752 F.Supp 1087 (D. D.C. 1990)………………………………..........................20

*Hanlon v. Chrysler Corp.*
    140 F.3d 1011 (9th Cir. 1998)………………….,,…………………….12, 14, 16, 17

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992)……………………………………………14

*In re Activision Securities Litigation*
    621 F.Supp. 415 (N.D. Cal. 1985)……………………….................14-15

*In re Alcoholic Beverages Litigation*
    95 F.R.D. 321 (D.C. N.Y. 1982)…………………………………........................12

*In re Cendant Corp., Derivative Action Litigation*
    232 F.Supp.2d 327 (D. N.J. 2002)…………………..……………………....24

*In re Chicken Anti-Trust Litigation*
    560 F.Supp 957 (N.D. Ga. 1980)……………………………….......................20

*In re Computer Memories Sec. Litig.*
    111 F.R.D. 675 (N.D. Cal. 1986)…………...………………………………12

*In re Heritage Bond Litigation*
    2005 WL 1594403 (C.D. Cal. 2005)…………………………….……………..24

*In re Omnivision Techs., Inc.*
    559 F.Supp.2d 1036 (N.D. Cal. 2008)………………………..……………6-7, 27

*In re Pacific Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)……………...………………………….....19, 20

*In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act
(FACTA) Litigation*
    295 F.R.D. 438 (C.D. Cal. 2014)………………………………………….24

*Jimenez v. Allstate Ins. Co.*
    765 F.3d 1161 (9th Cir. 2014)……………………………………………...13

*Jordan v. Los Angeles*
    669 F.2d 1311 (9th Cir. 1982)………………….………………………….11-12

*Kesler v. Ikea U.S., Inc., et al.*
    2008 WL 413268 (C.D. Cal. 2008)…………...............……………………13, 14

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978)……………………………………………15

*Local Joint Exec. Bd. of Culinary/Bartender
Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001)………………………………………...15, 17

iv

**Page(s)**

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
    834 F.2d 677 (7th Cir. 1987)…………………………………………………………..20

*Martin v. Pacific Parking Systems, Inc.,*
    2012 WL 2552694 (C.D. Cal. July 2, 2012),
    Rule 23(f) petition for permission for discretionary
    leave to appeal the District Court's denial of certification
    granted by 9th Cir. Docket No. 12-80144,
    *affirmed* 2014 WL 3686135 (July 25, 2014)..…………………………………………23

*Medrano v. WCG Holdings, Inc.*
    2007 WL 4592113 (C.D. Cal. 2007)……………………………...………………...13, 14

*Murray v. GMAC Mortgage Corp.*
    434 F.3d 948 (7th Cir. 2006)……………………………………………..............…17

*Murray v. GMAC Mortgage Corp. ("Murray II")*
    2007 WL 1100608 (N.D. Ill. 2007)……………………………………………......14, 19

*Nat'l Rural Telecomm. Coop. v. DirecTV*
    221 F.R.D. 523 (C.D. Cal. 2004)..…..……………………………………..7, 20, 21, 27

*Officers for Justice v. Civil Service Commission of
City and County of San Francisco*
    688 F.2d 615 (9th Cir. 1982)……………………………………………..........21, 24

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985)…………………………………………………………………17

*Priddy v. Edelman*
    883 F.2d 438 (6th Cir. 1989)……………………………………….....................20

*Robins v. Spokeo, Inc.*
    742 F.3d 409 (9th Cir. 2014)…………………………………………………………26

*Satchell v. Fed. Express Corp.*
    2007 WL 1114010 (N.D. Cal. 2007)…………………………………………...21, 27

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
    79 F.R.D. 571 (E.D. Pa. 1978)……………………………………….......................20

*Spokeo, Inc. v. Robins*
    135 S.Ct. 1892 (*certiorari* granted April 27, 2015)…………………………………26

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003)…..………………………..…..……………11, 21, 22

*Steinberg v. Carey*
    470 F.Supp. 471 (S.D. N.Y. 1979)…………………………………………………...20

*Strube v. American Equity Life Ins. Co.*
    226 F.R.D. 688 (M.D. Fla. 2005)………..……………………………………………19

**Page(s)**

*Tchoboian v. Parking Concepts, Inc.*
  2009 WL 2169883 (C.D. Cal. 2009)……...……………………………...13, 14

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993)…………………………………………………...21

*Valentino v. Carter-Wallace*
  97 F.3d 1227 (9th Cir. 1996)…………………………………………………17

*Yokoyama v. Midland Nat'l*
  594 F.3d 1087 (9th Cir. 2010)……………………………………………...17

*Zinser v. Accufix Research Institute, Inc.*
  253 F.3d 1188 (9th Cir. 2001)……………………………………………...16

**Federal Statutes**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA") …………...………………2, 17, 19

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")……………………………………………………...*passim*

15 U.S.C. § 1681n……………………………………………………………2, 14, 17, 22

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23…………………………………………...………………………11, 18

FRCP Rule 23(a)…………………………………………………………………11

FRCP Rule 23(a)(1)…………………………………………………………………11

FRCP Rule 23(a)(2)…………………………………………………………12, 13

FRCP Rule 23(a)(3)…………………………………………………………………13

FRCP Rule 23(a)(4)…………………………………………………………………15

FRCP Rule 23(b)(3)………………………...............................11, 15, 16, 17, 18, 19

FRCP Rule 23(b)(3)(A), (B) (C) and (D)……………………………………….........18

FRCP Rule 23(e)……………………………….............…………...7, 19, 20, 21

FRCP Rule 23(f)…………………………………………………...………………23

**Other Authorities**

*Newberg on Class Actions*, 4th Ed………….……………..……………………………..20-21

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

1                         <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.      INTRODUCTION**

3        On October 20, 2015, this Court entered an Order granting preliminary approval of the

4 proposed class action settlement.  Dkt. #30.  As part of the same Order, the Court approved a plan

5 of notice to be directed to Settlement Class members and set deadlines by which Settlement Class

6 members may opt-out, object or request to be heard at the final approval hearing.  Dkt. #30, ¶¶ 2,

7 8-14.

8        As explained in further detail below, notice to Settlement Class members has been

9 provided in conformity with the Court's Orders, and no Settlement Class member has opted-out,

10 objected or requested to be heard at the final approval hearing.

11        Plaintiff, Cirena Torres, on behalf of herself and on behalf of the Settlement Class, and

12 Defendant Kwong Yet Lung Co., Inc. (d/b/a International Marketplace) hereby respectfully move

13 the Court for an Order and Judgment granting final approval of the proposed class action

14 Settlement.

15 **II.     FACTUAL SUMMARY**

16        Defendant International Marketplace operates an international food store located at 5000

17 S. Decatur Boulevard, Las Vegas, Nevada 89118.  Dkt. #25: Kwan Decl. ¶¶ 2-4.  The store is open

18 to members of the public and offers for sale a wide variety of goods, including international

19 grocery items and kitchen supplies.  *Ibid.*  At any given time, International Marketplace will have

20 at least 25,000 different goods for sale and generally maintains around 30,000 different items in its

21 sale inventory.  *Ibid.*

22        In her declaration, Plaintiff Cirena Torres explains that she is a customer of International

23 Marketplace.  Dkt. #26: Torres Decl. ¶ 3.  She also explains that on October 11, 2014, Ms. Torres

24 made a purchase from the International Marketplace store and she paid for her purchase with her

25 credit card.  She further explains that the electronically printed customer receipt which she was

26 provided at the point of sale had the expiration date of her credit card, the first 5 digits and last 6

27 digits (which is a total of 11 of 16 digits of her card number), her name as it appears on the card,

28 and the brand of the card (e.g. Visa, etc.), all printed on her customer receipt. *Ibid.*

During the Settlement Class Period of December 31, 2012 to December 13, 2014, International Marketplace had a total of 259,696 credit card and debit card transactions.  Dkt. #25: Kwan Decl. ¶ 8.  Of these 259,696 credit card and debit card transactions, there were approximately 117,000 unique credit or debit cards used.  *Ibid.*  In other words, a number of customers made repeat purchases.  *Ibid.*

Plaintiff contends that each of these credit card and debit card purchases during the Settlement Class Period of December 31, 2012 to December 13, 2014 resulted in an electronically printed customer receipt that displays the respective credit or debit card's expiration date and more than the last 5 digits of the card number on each customer's receipt.  Dkt. #27: Yedalian Decl. ¶¶ 2-5; Dkt. #28: Flanagan Decl. ¶¶ 12-15; Dkt. #25: Kwan Decl. ¶ 7.

On December 12, 2014, International Marketplace received a letter from Plaintiff's counsel in this case entitled "Notice To Cease And Desist FACTA Violations; And Notice Of Class Action Lawsuit," together with an enclosed copy of the Complaint in this case.  Dkt. #25: Kwan Decl. ¶ 5.

On December 13, 2014, International Marketplace ensured that none of its machines were printing credit and debit card expiration dates and more than the last 5 digits of the card number on all electronically printed customer receipts.  Dkt. #25: Kwan Decl. ¶ 7.

The Fair and Accurate Credit Transaction Act ("FACTA"), which is a subset of the Fair Credit Reporting Act, provides that any merchant which accepts credit and/or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."  15 U.S.C. § 1681c(g)(1).  A merchant who "willfully" fails to comply with FACTA is liable for (1) actual damages, if any, or statutory damages of not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs.  15 U.S.C. § 1681n.

Plaintiff commenced this action on December 31, 2014 by filing a proposed class action complaint against International Marketplace and Doe defendants.  Plaintiff's Complaint alleges, *inter alia*, that International Marketplace and the other defendants willfully violated FACTA by printing the expiration date and more than the last 5 digits of credit and debit cards on

- 2 -

1  electronically printed customer receipts printed at a point of sale or transaction.  International

2  Marketplace denies any wrongdoing or violation of FACTA.

3  **III.     SETTLEMENT DISCUSSIONS, INCLUDING THE MEDIATION**

4       Beginning in January 2015, the Parties began to explore settlement discussions.  Yedalian

5  Decl. ¶ 4.  Proposals (oral and written) were made and considered as part of these discussions.

6  *Ibid*.  Underlying facts and information were also exchanged between the Parties to facilitate thee

7  discussions.  *Ibid*.  While these discussions did not result in a settlement agreement, they did result

8  in an agreement to continue discussions among the Parties and potentially with a third-party

9  mediator in the event the Parties could not reach a resolution on their own.  *Ibid*.

10      After further discussions among the Parties did not result in a settlement agreement, the

11 Parties agreed to participate in a mediation before the Honorable Philip Pro (Ret.) with the hope

12 that he could assist the Parties in resolving (or at least narrowing) their disputes and differences.

13 Yedalian Decl. ¶ 5.

14      Judge Pro was extremely proactive.  Yedalian Decl. ¶ 6.  He requested and received

15 briefing and other information and held a teleconference before the mediation to try to make

16 progress, or at least try to narrow or otherwise streamline issues in advance of the mediation.  *Ibid*.

17      Judge Pro was just as hands-on at the mediation.  Yedalian Decl. ¶ 7.

18      The Parties participated in an in-person mediation with Judge Pro in Las Vegas, Nevada on

19 May 13, 2015.  Yedalian Decl. ¶ 8.  Plaintiff Ms. Cirena Torres, and Class Counsel Mr. Chant

20 Yedalian each traveled to and personally attended the mediation along with local and Class

21 Counsel Mr. Kenneth Roberts.  *Id*. at ¶ 9.  The president of International Marketplace, Ms. Joyce

22 Kwan, and defense counsel, Mr. Jacques Chen also attended the mediation.  *Id*. at ¶ 9.

23      Although the mediation was initially scheduled for a half a day and commenced in the

24 morning, because the Parties were making progress with Judge Pro, the Parties and Judge Pro

25 agreed to continue on with the mediation into the early evening.  Yedalian Decl. ¶ 10.

26      During the mediation and with Judge Pro's assistance, the Parties reached agreement on a

27 class-wide settlement structure and benefits to class members.  Yedalian Decl. ¶ 11.  With the

28 class benefits negotiated and agreed upon, the Parties then proceeded with discussions concerning

1  attorneys' fees and costs and incentive awards.  *Ibid*.  Ultimately, all of these issues were resolved

2  with Judge Pro's assistance.  *Ibid*.

3       During the months that followed, counsel worked on the long-form settlement agreement,

4  entitled Stipulation And Settlement Agreement (hereinafter sometimes referred to as "Settlement

5  Agreement" or "Agreement") (which includes the Postal Notice, Store Notice, Full Notice, Claim

6  Form, and proposed Preliminary Approval Order). Exh 1.[2]  Yedalian Decl. ¶ 12.

7       Thus, the Settlement Agreement is a product of all of the extensive negotiations and

8  exchanges between May 2015 and September 2015, including but not limited to the mediation and

9  other discussions and negotiations with mediator Judge Pro.  Yedalian Decl. ¶ 13.  The Settlement

10  Agreement is also based upon the information exchanged by the Parties.  *Ibid*.

11  **IV.    NOTICE HAS BEEN PROVIDED TO SETTLEMENT CLASS MEMBERS IN**

12  **CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE CLASS**

13  **MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED TO BE HEARD**

14       Here, except for those members who have joined International Marketplace's membership

15  plan (for which 17,303 mailing addresses are known) International Marketplace does not know,

16  nor does it have access to postal addresses, email addresses, telephone numbers or facsimile

17  numbers of any of its non-member customers.  Dkt. #25: Kwan Decl. ¶ 9.

18       Thus, pursuant to the Court-approved notice plan, notice was to be provided to Settlement

19  Class members in the following ways:

20       **Postal Notice**

21       Postal Notice (using a postcard) will be mailed to any Settlement Class member for whom

22  a mailing address is known.  Agreement ¶ 12(a) and Exh. A; Dkt. #25: Kwan Decl. ¶ 9.

23       **Store Notice**

24       Store Notice will also be posted in the International Marketplace Store at each and every

25  cashier booth (such that each is conspicuously posted and visible to customers) for a period of one

26  hundred eighty (180) days (180 days is the duration of the claims period).  Agreement ¶ 12(b) and

27  Exh. B.  Both the Postal Notice and Store Notice shall include the Settlement Website address and

28  _____
[2] Capitalized terms shall have the same meanings as in the Settlement Agreement.

- 4 -

toll-free telephone number which Settlement Class members may use to obtain further information.  Agreement ¶¶ 12(a) and (b) and Exh. A and B.

**Settlement Website Notice**

A Settlement Website shall be established and maintained by the Claims Administrator and it will contain a summary description of the settlement terms and summarize options available to Settlement Class members.  Agreement ¶¶ 2.T. and 12(c).

**Full Notice and Claim Form**

The Settlement Website will also provide, free of charge, viewable, printable, and downloadable copies of relevant documents, including the Full Notice and Claim Form.  Further, Settlement Class members also have the option of submitting their claim through the Settlement Website, by completing and submitting an electronic version of the Claim Form on the internet through the Settlement Website.  Agreement ¶¶ 12(c) and 19(c).

**Declarations From the Parties Concerning Compliance With Notice Plan**

Filed concurrently with this Motion are the Supplemental Declaration Of Joyce Kwan and the Declaration of Kelly Kratz which establish that notice to the Settlement Class has been provided and (for the ongoing purpose of claims submission) continues to be provided in conformity with the Court-approved notice plan.  Supp. Kwan Decl. ¶¶ 3-6; Kratz Decl. ¶¶ 4-12.

**A.    No Opt-Outs**

Settlement Class members were provided a 60-day opt-out period after the date the Store Notice is first posted at the International Marketplace Store, to exclude themselves from the settlement (the "Opt-Out Deadline").  Dkt. # 30, ¶ 10.  Agreement ¶ 13.

This opt-out period expired on January 4, 2016.  Kratz Decl. ¶¶ 13-14.

No Settlement Class member opted-out during the opt-out period.   Kratz Decl. ¶ 15.

**B.    No Objections**

Settlement Class members were provided a 60-day period after the date Store Notice is first posted by International Marketplace, to object to the terms of the Settlement.  Dkt. # 30, ¶ 11.

This objection period expired on January 4, 2016.  Kratz Decl. ¶ 16.

During the objection period, no Settlement Class member objected to the Settlement. Yedalian Decl. ¶ 2; Kingrey Decl. ¶ 3; Kratz Decl. ¶ 17.

### C. No Notice of Intention to Appear

In addition to allowing Settlement Class members an opportunity to opt-out or object, Settlement Class members were also provided an opportunity to request permission to appear and speak at the final approval hearing. Dkt. # 30, ¶ 14.

Settlement Class members were provided until January 21, 2016 to make such a request concerning Class Counsel's motion for an award of attorneys' fees and costs and/or the Class Representative's motion for service (or incentive) award, and until January 4, 2016 concerning any other matter about the settlement. Dkt. # 30, ¶ 14; Kratz Decl. ¶ 18.

Thus far, no Settlement Class member requested permission to appear or speak at the final approval hearing. Kratz Decl. ¶ 19.

## V. CAFA NOTICE HAS BEEN PROVIDED TO THE APPROPRIATE GOVERNMENT OFFICIALS AND THEY HAVE NOT OBJECTED OR INTERVENED

On October 12, 2015, pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, written notice of this lawsuit and settlement was provided to the appropriate government entities of all 50 states and the U.S. Department Justice. Kingrey Decl. ¶¶ 4-6.

Other than requests for copies of certain documents in this Action, no response or objection has been received from the CAFA Coordinators of any of the 50 states or the U.S. Department of Justice (Kingrey Decl. ¶ 6 ), nor have any of them intervened as is demonstrated by the Court's records in this case.

## VI. THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO APPEAR PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT

The lack of any opt-outs, objections and requests to appear provides further support for the Settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043

- 6 -

(N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).   "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."   *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

The lack of any objection from or intervention by the CAFA Coordinators of the 50 states or U.S. Department of Justice likewise provides further support for the settlement.

## VII.   THE SETTLEMENT

Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in the Settlement Agreement.   A summary of the terms of the Settlement Agreement is as follows:

- During the Settlement Class period of December 31, 2012 to December 13, 2014, Plaintiff contends that 259,696 electronically printed credit and debit card customer receipts were printed that display the respective card's expiration date and more than the last 5 digits of the card number on each receipt.   Dkt. #27: Yedalian Decl. ¶¶ 2-5; Dkt. #28: Flanagan Decl. ¶¶ 12-15; Dkt. #25: Kwan Decl. ¶ 7.

- The Parties are not aware of any customer who has sustained any actual damages as a result of the printing of the expiration date or more than the last 5 digits of the card number on any of the subject receipts in this case.

- For the purposes of the settlement, the Parties have stipulated to the certification of the following Settlement Class: "all consumers who, at any time during the period December 31, 2012 to December 13, 2014 (the 'Settlement Class Period'), were provided an electronically printed receipt at the point of a sale or transaction at the International Marketplace Store, on which receipt was printed more than the last 5 digits of the credit card or debit card number and/or the expiration date of the consumer's credit card or debit card."   Agreement ¶ 2.S.

- Each Settlement Class member, after submission of a valid and timely Claim Form, will be eligible to receive one gift card with a value of $50.00 valid towards any purchase of a good or service at the International Marketplace Store (a "Gift Card").   Agreement ¶ 18(a).

- Each Settlement Class member may submit only one Claim Form regardless of the number of credit or debit card transactions made by that Class Member during the Settlement Class Period, and International Marketplace is only obligated to distribute one Gift Card per Settlement Class member. Agreement ¶ 18(a).

- A valid claim will require that a Settlement Class member provide one of the following items of information:  (1) an original or copy of a store receipt which shows more than the last 5 digits of the credit card or debit card number and/or the expiration date of the credit card or debit card printed on the receipt; (2) an original or copy of a credit card or debit card statement showing a transaction made at the International Marketplace store during the Settlement Class Period; or (3) for those Settlement Class members who happen to a member of the International Marketplace store, they may provide their member number and confirm that they made at least one purchase from the store during the Settlement Class Period.  Agreement at Exh. D.

- Each $50.00 Gift Card (i) will be fully transferable to any and all other persons, (ii) shall not expire, (iii) shall not be redeemable for cash, (iv) may only be used to make a purchase of any good or service at the International Marketplace Store, and (v) is not a coupon nor does it have the attributes of a coupon. Agreement ¶ 18(a).

- Approximately 95% of the items International Marketplace offers for sale are priced less than $50.00 and the average price of goods sold at the store is $4.20.  Dkt. #25: Kwan Decl. ¶ 4.

- Given the nature of this particular consumer class action case, the fact that International Marketplace does not know, nor does International Marketplace have access to any information which would enable it to determine, the postal addresses, email addresses, telephone numbers or facsimile numbers of those absent Settlement Class members who are not members of the store, and experience with consumer class action claims-made rates, it is expected that relatively few claims will be made and that a residue may result.  Accordingly, Plaintiff negotiated, and International Marketplace agreed to, a substantial *minimum* distribution as well as on a plan for the disposition of any residue from that *minimum* distribution.  Thus, 10,000 is the minimum number of International Marketplace Gift Cards to be distributed as part of this

- 8 -

settlement.  In the event that the number of valid claims is less than 10,000, the number of valid claims shall be deducted from 10,000 and the resulting amount shall be the number of Gift Cards that shall be distributed in an appropriate *cy pres* distribution.  Thus, for example, if there are 1,000 valid claims submitted, 1,000 Gift Cards would be distributed to those valid claimants; then, 1,000 would be subtracted from the 10,000 minimum Gift Card distribution and the resulting amount, 9,000 Gift Cards, would be distributed in an appropriate *cy pres* distribution.  Agreement ¶ 18(b).  The *cy pres* distribution proposed by Plaintiff consists of the following charities in equal divisions: (1) Las Vegas Valley Humane Society; (2) Desert Rescue Animal Sanctuary; and (3) Tortoise Group.[3]  On  October 15, 2015 Defendant's counsel proposed the following three charities as Defendant's proposed charities:  (1) Las Vegas Rescue Mission; (2) Three Square Food Bank; and (3) Catholic Charities of Southern Nevada. Plaintiff responded by offering to a compromise solution whereby the Parties could agree on proposing all 6 charities (the 3 proposed by Plaintiff and the 3 that Defendant proposed) with any residuals equally divided among them. Defendant responded "We will separately propose the charities we believe are appropriate."

•    As part of the settlement, International Marketplace shall implement a written FACTA compliance policy, stating that it shall comply with FACTA, 15 U.S.C. Section 1681c(g), and that it shall not print more than the last five digits of the credit or debit card number nor the credit or debit card expiration date upon any electronically printed receipt provided to any credit or debit cardholder at the point of any sale or transaction. Agreement ¶ 18(c).

---

[3] Plaintiff believes that there is a nexus between the Settlement Class and each of Plaintiff's selected charities and explains this nexus as follows:  Each Settlement Class member is, by definition, a customer of International Marketplace.  Thus, each Settlement Class member has an interest in food and related goods offered by International Marketplace (Kwan Decl. ¶ 6). Each of the charities proposed uses food as part of its charitable functions.  For example, as part of rehabilitating and otherwise maintaining the animals they care for, the charities feed the animals which they try to preserve.  Thus, if the charity decided they want to redeem Gift Cards at Defendant's store to obtain meat, produce, etc. to feed animals that they care for, that is a valid and valuable function.  The charities also have volunteers that they try to acquire to fulfill charitable functions.  The charities can thus provide food, etc., to these volunteers so that they can undertake work, whether it is in the desert, etc.  The charities can also use food and food related products in other ways too.  For example, the Las Vegas Valley Humane Society holds "Bake/Craft Sales" and they ask people to "provide goodies for our bake sales every other month" as one way to raise funds.  See http://www.lvvhumane.org/volunteer.php.  Thus, they can obtain products from Defendant's store for this purpose and/or sell the Gifts Cards.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

- The Parties agreed upon and the Court approved the notice plan set forth in section IV., above.

- Settlement Class members will have until May 2, 2016 (one hundred and eighty (180) days from the date of posting the Store Notice at the International Marketplace Store) to submit a Claim Form.   A Claim Form may be submitted electronically through the Settlement Website, by mail, or by facsimile.  Agreement ¶ 19.

- Settlement Class members will have until January 4, 2016 (sixty (60) days after the date the Store Notice is first posted at the International Marketplace Store) to exclude themselves from the Settlement Class (the "Opt-Out Deadline").  Agreement ¶ 13; Dkt. #30, ¶ 10.

- Settlement Class members will have until January 4, 2016 (sixty (60) calendar days after the date Store Notice is first posted by International Marketplace) to object to the terms of the settlement.  Any such objections must be filed with the Court and also served on Class Counsel and counsel for International Marketplace.  Agreement ¶ 14(a); Dkt. #30, ¶ 11.

- The Parties have agreed to Dahl Administration LLC as the designated third-party who will act as settlement administrator.  Agreement ¶ 2.B.

- International Marketplace will pay, separately and directly, all costs and expenses of the Class Notice and settlement administration (including, but not limited to, the Postal Notice, Store Notice, Full Notice, the Claims Administrator's fees, costs and expenses, facsimile number, and toll-free call-in number). These fees, costs and expenses shall be separate from, and in addition to, the Class Counsel Attorneys' fees and costs and the Class Representative's incentive award. Agreement ¶ 12.

- Class Counsel will apply to the Court for an incentive (service) award of up to $5,000 to the named Plaintiff, to be paid separately by International Marketplace, to compensate Plaintiff for her services as the Class Representative.  Agreement ¶ 22.

- Class Counsel will apply to the Court for an award of up to $135,000 for attorneys' fees and legal costs, to be paid separately by International Marketplace, to compensate Class Counsel for investigating the facts, prosecuting the lawsuit, negotiating the Settlement, causing

International Marketplace to implement a new written policy concerning FACTA, and implementing the settlement.  Agreement ¶ 21.

- Consistent with the Agreement and this Court's Orders Class Counsel's motion for an award of attorneys' fees and costs and the Class Representative's motion for service (or incentive) awards will be posted on the Settlement Website no later than January 12, 2016 (thirty (30) days before the Fairness Hearing scheduled by the Court).  Agreement ¶ 14(b); Dkt. #30, ¶ 12.  Any objection thereto must be filed and served no later than January 21, 2016 (twenty-one (21) days before the Fairness Hearing).  *Ibid.*

## VIII.   THE SETTLEMENT CLASS

For the purposes of the Settlement, the Parties have stipulated to the certification of the following Settlement Class: "all consumers who, at any time during the period December 31, 2012 to December 13, 2014 (the 'Settlement Class Period'), were provided an electronically printed receipt at the point of a sale or transaction at the International Marketplace Store, on which receipt was printed more than the last 5 digits of the credit card or debit card number and/or the expiration date of the consumer's credit card or debit card."  Agreement ¶ 2.S.

In reviewing a class action settlement, a "district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  This action meets these governing standards for certification under Rule 23(a) and Rule 23(b)(3).

International Marketplace joins this section VIII only for the purposes of effectuating the settlement set forth in the Settlement Agreement.

### A.   Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

1   impracticable." *Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).**4**

2        In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64,

3   and 71 were large enough such that the other factors need not be considered.  *Ibid.*  "The fact that

4   the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a

5   class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic*

6   *Beverages Litig.*, 95 F.R.D. 321, 324 (D.C. N.Y. 1982); *In re Computer Memories Sec. Litig.*, 111

7   F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact number

8   of class members, but demonstrated that class would "obviously be sufficiently numerous").

9        Here, the 259,696 credit card and debit card receipts (for which approximately 117,000

10  unique credit or debit cards were used) demonstrates that the sheer number of class members

11  easily surpasses the class sizes in *Jordan* which the Ninth Circuit deemed satisfied the numerosity

12  requirement.  Dkt. #25: Kwan Decl. ¶¶ 7-8; Dkt. #27: Yedalian Decl. ¶¶ 2-5; Dkt. #28: Flanagan

13  Decl. ¶¶ 12-15.

14        The fact that, by the very nature of the Settlement Class, many of its members are

15  unknown and cannot be readily identified, further dictates that joinder is impracticable.  *Jordan*,

16  669 F.2d at 1319-1320; Dkt. #25: Kwan Decl. ¶ 9.

17   **B.    Commonality**

18        Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  This

19  commonality requirement must be "construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d

20  1011, 1019 (9th Cir. 1998).  "All questions of fact and law need not be common to satisfy the rule.

21  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common

22  core of salient facts coupled with disparate legal remedies within the class." *Ibid.*  Where a class is

23  united by a common interest in determining whether a defendant's broad course of conduct is

24  actionable, commonality is not defeated "by slight differences in class members' positions."

25  *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

---

26  **4**  "Where the class is not so numerous, however, the number of class members does not weigh as
27  heavily in determining whether joinder would be infeasible.  In the latter situation, other factors
    such as the geographical diversity of class members, the ability of individual claimants to institute
28  separate suits, and whether injunctive or declaratory relief is sought, should be considered in
    determining impracticability of joinder."  *Jordan*, *supra*, 669 F.2d at 1319.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

"This analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims. Compare *Dukes*, 131 S.Ct. at 2556 (**'We quite agree that for purposes of Rule 23(a)(2), even a single common question will do.'**) (internal quotation marks omitted), *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) ('Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution.'), *Mazza*, 666 F.3d at 589 ('[C]ommonality only requires a single significant question of law or fact.'), with *Dukes*, 131 S.Ct. at 2551 ('What matters to class certification is not the raising of common `questions'—even in droves.')" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

Commonality cannot be disputed here.  All class members share two common legal questions – whether International Marketplace violated FACTA by printing the expiration date and more than the last 5 digits of debit and credit cards on receipts, and whether its practice of doing so was "willful."  None of the relevant questions relates to the conduct of the class members, but rather all focus on International Marketplace's conduct and culpability in violating FACTA. See, *e.g.*, *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883 *5 (C.D. Cal. 2009), petition for permission to appeal grant of certification denied October 20, 2009, 9th Cir. Docket No. 09-80132 ("The overriding legal issue is whether [defendant']s alleged noncompliance was willful so that the class members are entitled to statutory damages.  Moreover, whether [defendant] violated FACTA is a combined question of law and fact common to all members."); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113 *2 (C.D. Cal. 2007) ("There is a common core of salient facts across the class.  Each member of the proposed class received a non-compliant receipt from [Defendant] after the applicable compliance deadline."); *Kesler v. Ikea U.S., Inc., et al.*, 2008 WL 413268 *3 (C.D. Cal. 2008) ("In this case, the facts and legal issues of each class member's claim are nearly, if not entirely, identical.  There is a common core of salient facts across the class.  Each member of the proposed class received a non-compliant receipt from IKEA after the December 4, 2006 FACTA compliance deadline.  The overriding legal issue is whether IKEA's noncompliance was willful, so that the class members are entitled to statutory damages.")

**C.    <u>Typicality</u>**

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims ... of the class."  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020. Named plaintiffs need not be "identically situated" with all other class members; rather, "[i]t is enough if their situations share a 'common issue of law or fact' [citation] and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'"  *Cal. Rural Legal Assistance, Inc. v. Legal Services. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).   Moreover, typicality refers to the "nature of the claim … of the class representative, and not to the specific facts from which it arose or the relief sought."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ibid*.

Here, Plaintiff and all other class members allege the same injury, violation of their FACTA rights resulting from the same course of conduct — the printing of their card expiration date and more than the last 5 digit of their card number on credit or debit card receipts. Accordingly, this lawsuit is based on conduct which is not unique to Plaintiff, but on standardized, uniform conduct that is common to all class members.  Moreover, the same relief, specifically, statutory damages under 15 U.S.C. § 1681n, is sought for all class members for International Marketplace's "willful" violation of FACTA.  Accordingly, the typicality requirement is satisfied. *Tchoboian*, 2009 WL 2169883 *5 (C.D. Cal. 2009) (holding that typicality is satisfied because "[Plaintiff]'s claim is, in fact, 'substantially identical' to the claims of the proposed class members-namely, he alleges that [defendant] issued him a noncompliant receipt in willful violation of the FACTA"); *Medrano*, 2007 WL 4592113 *3 (same); *Kesler*, 2008 WL 413268 *4 (same); *Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608 *5 (N.D. Ill. 2007) ("*Murray II*") (typicality satisfied where, despite minor factual discrepancies, all putative class members had "the same essential characteristics"); *In re Activision Securities Litigation*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only material variation among class members is the amount of damages to

- 14 -

which each member is entitled" and that "[s]uch differences are insufficient to defeat class certification.")

### D.   <u>Adequate Representation</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Representation is adequate if (1) class counsel is qualified and competent and (2) the class representative and his or her counsel are not disqualified by conflicts of interest. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, there are no conflicts of interest between Plaintiff and Settlement Class members. Plaintiff and each class member assert identical claims for statutory damages arising from the same facts, *i.e.*, International Marketplace's printing of the expiration date and more than the last 5 digits of the respective credit or debit card on receipts.  Thus, there is no potential for conflicting interests in this action.  *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (no conflict where claims asserted by plaintiff and class members arise from defendants' use of form letters allegedly violating the Fair Debt Collection Practices Act).  Moreover, there is no basis for asserting against Plaintiff any unique defenses that International Marketplace could not assert against any other Settlement Class member.  Nor is there any basis to suggest that Plaintiff lacks sufficient zeal or competence.

Nor are their any conflicts with Plaintiff's counsel.  Plaintiff is represented by highly capable and competent counsel experienced in class action litigation, including FACTA lawsuits. Yedalian Decl. ¶¶ 35-49.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

### E.   <u>Rule 23(b)(3) Requirements Are Met</u>

The Parties seek certification pursuant to Rule 23(b)(3), which authorizes certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FRCP 23(b)(3).  Rule 23(b)(3)'s predominance and superiority factors are satisfied.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

### 1.     Predominance of Common Questions

To satisfy predominance, common questions of law or fact must "present a significant aspect of the case" and be capable of resolution "in a single adjudication."  *Hanlon*, 150 F.3d at 1022-1023; *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

In this case, whether International Marketplace violated FACTA "willfully" is the central issue that clearly predominates over any individual issues.  Whether International Marketplace did so depends upon facts concerning its own conduct — conduct that applies uniformly to all class members in this case.

That common issues predominate is also bolstered by the fact that the available remedy in this case is statutory damages.  As the Ninth Circuit explained in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010), "irrespective of whether Bateman and all the potential class members can demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages."

That common issues predominate is also evidenced by the fact that all class members' claims involve the very same conduct by International Marketplace —the printing of receipts which contain the credit or debit card's expiration date and more than the last 5 digits.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

### 2.     Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alterative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority

requirement.   "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."  *Culinary/Bartender Trust Fund*, 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

In *Local Joint Executive Board of Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330.  Here, class members can recover, at most, statutory damages in an amount between $100 and $1,000 per violation.   As in *Culinary/Bartender Trust Fund*, "This case involves multiple claims for relatively small individual sums…. If plaintiffs cannot proceed as a class, some-perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. 'Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'"  *Id.* at 1163; see also *Hanlon*, 150 F.3d at 1023 (explaining that "In this sense, the proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir. 2010); ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009)  ("policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").  In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the FCRA[5], the Seventh Circuit held as follows: "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

The Supreme Court has similarly held.  *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797, 809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs

---

[5]  "FACTA and other provisions of the FCRA [the Fair Credit Reporting Act] share the same statutory damages provision, see 15 U.S.C. § 1681n."  *Bateman, supra*, 623 F.3d at 715.

totaled $1,006.00.  Such plaintiffs would be unlikely to obtain legal redress…. This, of course, is a central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount.  Economic reality dictates that petitioner's suit [involving individual damage of $70] proceed as a class action or not at all").

In sum, as the Ninth Circuit explained in another FACTA case, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman*, 623 F.3d at 722.

The above authorities clearly dictate that the superiority requirements of Rule 23(b)(3) are satisfied here.

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are (A) the interest of class members in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by other class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  However, when a court reviews a class action settlement, the fourth factor does not apply.  In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems."  *Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997).  The remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

First, class members have no particular interest in individually controlling the prosecution of separate actions.  Statutory damages cannot exceed $1,000, and the fact of the matter is that there is no other known separate action filed or prosecuted by any other class members. Moreover, any Settlement Class member who desires to pursue actual damages could opt out of the Settlement.

Second, and as explained above, the Parties are not aware of any other litigation regarding the FACTA violations at issue in this case.

Third, it is desirable to concentrate the litigation in this forum because International

- 18 -

Marketplace resides in Nevada and the alleged FACTA violations involve the International Marketplace store in Nevada and within this district where the receipts were issued.  Moreover, Plaintiff and International Marketplace have reached a Settlement.  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious."  *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133747 *19 (M.D. Fla. 1998); *Strube v. American Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").

The conclusion is inescapable that there simply is no better method than a class action for resolving all the claims of the Settlement Class Members in this case.  The conclusion of the court in *Murray II*, where the court certified a case involving claims for statutory damages under the FCRA, applies equally here:

> "This is a case where class certification presents the most efficient means of adjudicating the controversy.  The class is numerous but the potential recovery for each class member is quite small.  Indeed, it is exceedingly unlikely that many individuals would wish to go to court for a potential recovery of $100-or that they could find counsel willing to represent them." *Murray II*, 2007 WL 1100608 *7.

Finally, FACTA is a consumer protection statute which serves not just to compensate, but also to "deter" future violations.  *Bateman*, 623 F.3d at 718.  As the Ninth Circuit has also explained, this "deterrent purpose" of FACTA is served by certification: "we are quite sure that certification of a class here would preserve, if not amplify, the deterrent effect of FACTA." *Id.* at 723.

## IX.    THE TWO-STEP APPROVAL PROCESS

There is a "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of continued litigation.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

A settlement of class litigation must be reviewed and approved by the Court.  FRCP Rule 23(e).  This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final

review after notice has been distributed to the class members for their comment or objections.

This Court has already performed the first step, having granting preliminary approval of the proposed settlement on October 20, 2015 (Dkt. #30), and this Motion concerns the second step.

At the second step of the approval process (usually referred to as the fairness hearing or final approval hearing), after class members have been notified of the proposed settlement and have had an opportunity to be heard, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

## X.    THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that the negotiations were conducted in good faith.  *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been intimately involved in this litigation.  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. [citation.]  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also*

- 20 -

1   *Newberg*, § 11:47.

2       As further explained below, this presumption of fairness is further bolstered by the fact

3   that the Settlement was reached through the extensive negotiations that occurred with the

4   assistance of a mediator, Judge Pro (Ret.).  *Satchell v. Fed. Express Corp.*, 2007 WL 1114010 *4

5   (N.D. Cal. 2007).

6   **XI.   THIS SETTLEMENT IS FAIR AND REASONABLE**

7       The Settlement is well within the range of reasonableness and final approval should be

8   granted.  No single criterion determines whether a class action settlement meets the requirements

9   of Rule 23(e).  In connection with final approval determinations, the Ninth Circuit has directed

10  district courts to consider a variety of factors without providing an "exhaustive list" or suggesting

11  which factors are most important.  *Staton*, *supra*, 327 F.3d at 959.  "The relative degree of

12  importance to be attached to any particular factor will depend upon and be dictated by the nature

13  of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

14  presented by each individual case."  *Officers for Justice v. Civil Service Commission of City and

15  County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "one factor alone may prove

16  determinative in finding sufficient grounds for court approval."  *Nat'l Rural Telecomm. Coop. v.

17  DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,

18  1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

19      Due to the impossibility of predicting any litigation result with certainty, a district court's

20  evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate

21  balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625.  The

22  ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the

23  class as a whole." *Staton*,  327 F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*,

24  the district court's role in evaluating a class action settlement is therefore tailored to meet that

25  narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a

26  reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

27  between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625.  Accordingly, the Ninth

28  Circuit will not reverse a district court's approval of a class action settlement unless the settlement

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

provisions clearly suggest the possibility that class interests gave way to self interest.  *Staton*, 327 F.3d at 961.  Some of the factors which were considered in evaluating the reasonableness of this Settlement are as follows:

**A.**  **Risks of Continuing Litigation**

Absent this Settlement, there are very real risks involved in continued litigation, including extensive delays, potential appeals and the possibility that Settlement Class members may ultimately end up with no recovery.  Yedalian Decl. ¶ 14.

**1.**  **"Willfulness"**

In order to recover any statutory damages and other remedies under 15 U.S.C. § 1681n, Plaintiff must show that International Marketplace engaged in "willful" conduct.  However, International Marketplace has vigorously denied that its conduct was willful.  Yedalian Decl. ¶ 16. In contrast, Plaintiff believes, among other things, that the printing of the expiration date and more than the last 5 digits of the card number was reckless and obvious to International Marketplace and the result of a lack of adequate measures to safeguard consumer rights.  *Ibid.*

Regardless of how strongly the Parties feel about the merits, the Parties face issues and risks concerning how the legal requirements for a "willful" violation of FACTA will be applied to the particular facts of this case.  Yedalian Decl. ¶ 17.

**2.**  **Class Certification**

The Parties have sharply divergent positions on class certification in this case, absent a settlement.  International Marketplace has denied that for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment.  Agreement ¶ 4; Yedalian Decl. ¶ 18.

Plaintiff believes that the Ninth Circuit's decision in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), which reversed the denial of class certification in another FACTA case, strongly supports certification in this case.  Yedalian Decl. ¶ 19.

Yet, absent a settlement, class certification remains a hotly contested matter in this case, and there are risks attendant in continued litigation of these issues, including, at a minimum, delays and potential appeals.  Yedalian Decl. ¶ 20.

- 22 -

1    For example, after the Ninth Circuit's decision in *Bateman*, one district court within the

2    Central District denied class certification in a FACTA case, *Martin v. Pacific Parking Systems,*

3    *Inc.*, 2012 WL 2552694 (C.D. Cal. July 2, 2012).   On September 6, 2012, the Ninth Circuit

4    granted a Rule 23(f) petition for permission for discretionary leave to appeal the district court's

5    denial of certification in *Martin* (9th Cir. Docket No. 12-80144), and on appeal it was held that the

6    district court did not abuse its discretion based upon the facts in that case.   2014 WL 3686135

7    (July 25, 2014).  Yedalian Decl. ¶ 21.

8    In sum, while Plaintiff feels strongly about certification in this case, *Martin* is an example

9    of a FACTA case demonstrating the risks inherent in certification, including, at a minimum,

10   delays and potential appeals.  Yedalian Decl. ¶ 22.

11   **B.**     **Substantial Benefits of Settlement Compared to Risks of Continued Litigation**

12   The Settlement provides for substantial benefits.

13   The settlement provides that each Settlement Class member who submits a valid and

14   timely claim will be entitled to receive one Gift Card in the amount of $50.   Agreement ¶ 18(a).

15   Further, the Settlement provides for a guaranteed *minimum* of 10,000 Gift Cards to be distributed

16   and establishes a *cy pres* mechanism to ensure distribution.   Agreement ¶ 18(b).   Additionally,

17   International Marketplace will pay, separately and directly, all costs and expenses of the Class

18   Notice and settlement administration (including, but not limited to, the Postal Notice, Store

19   Notice, Full Notice, the Claims Administrator's fees, costs and expenses, facsimile number, and

20   toll-free call-in number).  Agreement ¶ 12.  The Parties have agreed to Dahl Administration LLC

21   as the designated third-party who will act as settlement administrator ("Claims Administrator").

22   Agreement ¶ 2.B.  Based upon the administration of 17,303 known postal mailing addresses alone,

23   the Claims Administrator provided a quote of $ 21,851 to defense counsel.

24   Further, the value of the International Marketplace Gift Card is considerable in that it is

25   50% of the minimum statutory damages ($100) available for a willful violation of FACTA.

26   Although compared to the maximum possible recovery of $1,000 in statutory damages, $50.00 is a

27   5% value (which is not insubstantial), the propriety of awarding *full* statutory damages to

28   Settlement Class members who do not claim actual monetary loss is strongly disputed.   Many

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

1   FACTA defendants have argued that lack of "actual harm" precludes, if not any award of statutory

2   damages to begin with, at the very least "excessive" statutory damages.  Since it remains to be

3   seen how courts will resolve such constitutional challenges to statutory damage awards under

4   FACTA, the value negotiated by the Parties represents a fair compromise well within the range of

5   reasonableness.  Yedalian Decl. ¶ 25.

6       "The proposed settlement is not to be judged against a hypothetical or speculative measure

7   of what *might* have been achieved by the negotiators."  *Officers for Justice*, *supra*, 688 F.2d at

8   625.  Moreover, as long as the Settlement is reasonable, it does not matter that under the best case

9   scenario, the potential value of the case may be much higher.  *In re Cendant Corp., Derivative*

10  *Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided

11  less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*,

12  2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of

13  shareholder class actions were between 2% - 3% of possible damages).

14      The $50 Gift Card is also reasonable when compared to the value of similar benefits in

15  other FACTA cases.  For example, in *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate*

16  *Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438,

17  447 (C.D. Cal. January 17, 2014), the Court found that the benefit of vouchers having a maximum

18  combined value of $30.00 was reasonable in a case alleging nationwide FACTA violations against

19  a much larger corporate defendant.

20      Another benefit of this lawsuit and settlement is the fact that, as part of the settlement,

21  International Marketplace shall implement a written FACTA compliance policy, stating that it

22  shall comply with FACTA, 15 U.S.C. Section 1681c(g), and that it shall not print more than the

23  last five digits of the credit or debit card number nor the credit or debit card expiration date upon

24  any electronically printed receipt provided to any credit or debit cardholder at the point of any sale

25  or transaction. Agreement ¶ 18(c).  This FACTA compliance policy ensures that International

26  Marketplace will not continue to violate the law, willfully, inadvertently or otherwise.  Yedalian

27  Decl. ¶ 26.

28

1    Such non-pecuniary benefits are properly considered in judging the results of the lawsuit.

2    *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking

3    into account fact that, in addition to monetary aspects, the defendant stopped the practices at

4    issue).  This is especially true with a consumer protection statute such as FACTA which, as the

5    Ninth Circuit has held, serves both a compensatory and "deterrent purpose." *Bateman*, 623 F.3d at

6    718.  "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to

7    identity thieves.'"  *Ibid.*  The non-pecuniary benefits achieve that substantial purpose.

8    The importance of such non-pecuniary benefits was also recently explained by the Ninth

9    Circuit in a case involving another consumer protection statute, the Fair Debt Collection Practices

10   Act:

11   "The FDCPA is a consumer protection statute and was intended to permit, even

12   encourage, attorneys like Lemberg to act as private attorney generals to pursue

13   FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to

14   benefit from this case.  Mickell admits that he has ceased his practice of sending

15   letters to debtor's workplaces, a benefit to all class members.  Furthermore, certifying

16   the class will serve a 'deterrent' component to other debt collectors who are engaging,

17   or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of*

18   *Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

19   **C.**   **Agreement Provides That Change Of Law Before Final Approval**

20   **of Settlement Will Not Compromise Settlement Class Members' Benefits**

21   A further benefit of the settlement assures that if there is an intervening change of law

22   before final approval of the settlement, the settlement and settlement benefits will continue to

23   remain valid, enforceable and available to Settlement Class members.  Agreement ¶ 41.

24   The significance of this benefit cannot be understated.  For example, as explained by the

25   Ninth Circuit in *Bateman*, in 2008 (while many FACTA lawsuits were then pending) Congress

26   enacted the Credit and Debit Card Receipt Clarification Act ("Clarification Act").   The

27   Clarification Act retroactively granted a *temporary* immunity from statutory damages for FACTA

28   violations to those defendants that printed an *<u>expiration date</u>* "between December 4, 2004, and

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:14-CV-02223-MMD-PAL

1   June 3, 2008 [the date the Clarification Act was enacted]."  *Bateman*, *supra*, 623 F.3d at 717.  As a

2   result of the change of law imposed by the Clarification Act, many FACTA class action cases

3   were dismissed without any recovery for consumers.  Yedalian Decl. ¶ 28.

4        The risks posed by potential changes in the law through judicial opinions likewise cannot

5   be understated, particularly in the dynamic area of statutory damage issues.  For example, in a case

6   involving another statute, the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the

7   Ninth Circuit reaffirmed the principle that a violation of statute gives rise to Article III standing,

8   even in the absence of actual monetary damages: "The injury required by Article III can exist

9   solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"

10  *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010).  However, the United States

11  Supreme Court granted *certiorari* in the *Edwards* case to consider the Article III standing issue.

12  *First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (June 20, 2011). The Supreme Court's anticipated

13  decision was expected to have potentially far reaching effects in the area of statutory damage

14  cases.  The Supreme Court's grant of *certiorari* caused substantial uncertainty and provided

15  defendants facing statutory damage allegations with a potential defense that the law may change.

16  On the last day of the Supreme Court's term, the Supreme Court dismissed the writ of certiorari as

17  improvidently granted.  *First Am. Fin. Corp. v. Edwards*, 132 S.Ct. 2536, 2537 (June 28, 2012).

18  Thus, while no change of law occurred as a result of the Supreme Court's actions in *Edwards*,

19  these events likewise demonstrate the potential for changes in law and the real benefits conferred

20  by the settlement which safeguards against any such potential changes.  Yedalian Decl. ¶ 29.

21       Indeed, the issue of statutory damages is once again before the Supreme Court as a result

22  of *certiorari* granted in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014).  See *Spokeo, Inc. v

23  Robins*, 135 S.Ct. 1892 (*certiorari* granted April 27, 2015).

24       **D.     The Settlement Is The Product of Extensive Arm's-Length Negotiations**

25       The Agreement is the product of extensive, adversarial, arm's-length discussions,

26  negotiations, correspondence, factual and legal investigation and research, and careful evaluation

27  of the respective parties' strengths and weaknesses.  Yedalian Decl. ¶¶ 30-34.

28       The Agreement was also reached through the extensive negotiations that occurred with the

- 26 -

assistance with the mediator, Judge Pro. (Ret.).   Yedalian Decl. ¶¶ 5-13. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010 *4 (N.D. Cal. 2007).

**E.** **The Findings Made In This Court's Orders Granting Preliminary Approval Likewise Support The Grant of Final Approval**

The findings made in this Court's Orders granting preliminary approval of settlement (Dkt. #30), are likewise adequate considerations that support the grant of final approval of the settlement.

**F.** **The Lack Of Any Opt-Outs, Objections And Requests To Appear Also Supports The Grant of Final Approval**

The lack of any opt-outs, objections and requests to appear also provides further support for the Settlement.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).  "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."  *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

The lack of any objection from or intervention by the CAFA Coordinators of the 50 states or U.S. Department of Justice likewise provides further support for the settlement.

**XII.** **CONCLUSION**

The proposed class action settlement is fair, adequate and reasonable.  It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by experienced counsel and with the assistance of mediator, Judge Pro (Ret.).

It is respectfully requested that the Court grant final approval of the settlement and enter an order and judgment in the form proposed and submitted herewith.

1    Plaintiff also respectfully requests that the Court grant Plaintiff's Motion For Award Of

2 Attorneys' Fees And Costs To Class Counsel And Incentive Payment To The Class Representative

3 (set for hearing concurrently with this instant Motion).

4

5                                 Respectfully submitted,

6

7 DATED:  January 8, 2016          CHANT & COMPANY
                                   A Professional Law Corporation
8

9                                  By:   /S/ – Chant Yedalian_____
10                                       Chant Yedalian
                                   Counsel For Plaintiff and the Settlement Class
11

12

13

14

15                        **CERTIFICATE OF SERVICE**

16    I hereby certify that I electronically filed the foregoing with the Court using the CM/ECF

17 system which will send notification of such filing to the electronic service list for this case.

18
Dated:  January 8, 2016              CHANT & COMPANY
19                                   A Professional Law Corporation

20
                                     By:   /S/  Chant Yedalian_____
21                                         Chant Yedalian

22

23

24

25

26

27

28

- 28 -